IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMIL COOPER,                    :
    **Plaintiff**               :
                                :        No. 1:19-cv-02227
    **v.**                      :
                                :        (Judge Kane)
MARK GARMAN, <u>et al.</u>,     :
    **Defendants**              :

## <u>MEMORANDUM</u>

Presently before the Court are the motion for summary judgment (Doc. No. 56) filed by

<u>pro se</u> Plaintiff Jamil Cooper ("Plaintiff") and the cross motion for summary judgment (Doc. No.

64) filed by Defendants Mark Garman ("Garman"), John Wetzel ("Wetzel"), Trisha Pilosi

("Pilosi"), Corrections Officer Muthler ("Muthler"), and Corrections Officer Kauert ("Kauert").

The motions are fully briefed and ripe for disposition.

## I.    BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Rockview in

Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action on December

30, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants.  (Doc. No. 1.)

Plaintiff alleges that on April 25, 2018, Defendants Kauert and Muthler conducted a random

search of his cell.  (<u>Id.</u> ¶ 28.)  Defendant Kauert examined Plaintiff's possessions and questioned

him about various legal documents, including interrogatories Plaintiff was preparing for a

separate civil action, as well as copies of grievances and affidavits prepared by other inmates that

Plaintiff possessed.  (<u>Id.</u> ¶¶ 29-49, 51-53.)  Defendants Kauert and Muthler placed many of these

materials in a bag and also confiscated a bottle of allergy medicine that was no longer sold

through the commissary.  (<u>Id.</u> ¶¶ 48-50.)

Later that night, Defendant Kauert issued Misconduct #D110123 to Plaintiff, charging him with possession of contraband (non-prescribed drugs), and possession of the legal material and grievances of others.  (Id. ¶ 54.)  Plaintiff avers that Defendant Kauert "fashioned the [misconduct] in a way to have the legal exemption that was granted by the Rockview Staff to [Plaintiff] for extra storage in his cell for legal work to be suspended."  (Id. ¶ 55.)  Plaintiff subsequently had a misconduct hearing before Defendant Pilosi and received a sanction of thirty (30) days' cell restriction.  (Id. ¶ 58.)  The Security Department was also directed to determine whether Plaintiff was in the possession of contraband.  (Id.)  According to Plaintiff, Defendant Pilosi stated that he had not violated any rules but stated that Plaintiff was "gonna plead guilty to something."  (Id. ¶ 59.)  Plaintiff appealed Defendant Pilosi's decision to the Program Review Committee ("PRC").  (Id. ¶¶ 60-61.)

While awaiting the PRC's response, Plaintiff spoke to Defendant Garman about the random cell search and confiscation of his items.  (Id. ¶¶ 61-62.)  Plaintiff claims that Defendant Garman said that his staff could look through and read any paperwork in an inmate's cell if they wanted to and that he saw "no problem with asking questions about paperwork during a cell search even if [it is] legal work or legal mail."  (Id. ¶ 64.)  Subsequently, Defendant Garman rejected Plaintiff's misconduct appeal as untimely.  (Id. ¶ 66.)  Plaintiff appealed to the Office of the Chief Hearing Examiner but claims he did not receive a response.  (Id. ¶¶ 68, 75.)

On June 28, 2018, Plaintiff wrote to the Security Office to request the return of his legal documents.  (Id. ¶ 76.)  Before receiving a response, Plaintiff spoke with Security Captain Vance about the issue, and Vance informed him that it was likely that his documents had been destroyed.  (Id. ¶¶ 77-79.)  In response, Plaintiff filed Grievance #746684.  (Id. ¶ 79.)  On July 24, 2018, Plaintiff was called to the Security Office and all of the confiscated items were

2

returned to him.  (Id. ¶ 80.)  Based on the foregoing, Plaintiff alleges that Defendants violated his

First Amendment right to be free from retaliation and his Fourteenth Amendment due process

rights.  (Id. ¶¶ 90-111.)  Plaintiff seeks a declaratory judgment, a "[name] clearing hearing," and

damages.  (Id. at 33.)

Following the conclusion of discovery, Plaintiff filed his motion for summary judgment

on March 5, 2021.  Defendants filed their cross motion for summary judgment on April 23, 2021.

(Doc. No. 64.)  That same day, observing that Defendants raised the issue of whether Plaintiff

properly exhausted his administrative remedies with respect to his claims in accordance with the

Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties

that it would consider the exhaustion issue in the context of summary judgment and, by doing so,

would consider matters outside the pleadings in its role as factfinder.[1]  (Doc. No. 67.)  The Court

directed Plaintiff to file a brief in opposition addressing the issue of administrative exhaustion

and a statement of material facts responding to Defendants' statement within thirty (30) days.

(Id.)  Plaintiff filed his responsive materials (Doc. Nos. 68-70),[2] to which Defendants have filed

a reply brief (Doc. No. 71).

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

[2] In their reply brief, Defendants assert that Plaintiff "has improperly filed two separate
oppositional briefs responding to [their] motion."  (Doc. No. 71 at 1.)  Plaintiff filed one brief on
May 12, 2021 (Doc. No. 68) and a second on May 24, 2021 (Doc. No. 70).  Defendants assert
that his second brief should be stricken because he did not receive leave of Court to file a second
brief.  (Doc. No. 71 at 2.)
        Upon review of Plaintiff's filings, it appears that his first brief is directed toward
Defendants' motion for summary judgment and his second brief responds to the arguments
raised in their brief in support thereof.  Plaintiff's filing of two separate briefs is consistent with
his practice in his previous action in Cooper v. Pa. Dep't of Corr., No. 1:12-cv-1186 (M.D. Pa.)
(Doc. Nos. 104, 106).  The Court, therefore, deems Plaintiff's second brief to be his true brief in
opposition to Defendants' motion for summary judgment and declines to strike it from the
record.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides

that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome

of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957

F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at

257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88

(3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view

the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler,

986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992);

White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment,

however, the nonmoving party may not rest on the unsubstantiated allegations of his or her

pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of

identifying evidence that demonstrates the absence of a genuine issue of material fact, the

nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to

interrogatories, or the like in order to demonstrate specific material facts that give rise to a

genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

"The rule is no different where there are cross-motions for summary judgment."

Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).  "Cross-motions are no

more than a claim by each side that it alone is entitled to summary judgment, and the making of

such inherently contradictory claims does not constitute an agreement that if one is rejected the

other is necessarily justified or that the losing party waives judicial consideration and

determination whether genuine issues of material fact exist."  Muhammad v. Martin, No. 3:19-

cv-1316, 2021 WL 832645, at *2 (M.D. Pa. Mar. 4, 2021) (citing Rains v. Cascade Indus., Inc.,

402 F.2d 241, 245 (3d Cir. 1968)).  "[E]ach movant must demonstrate that no genuine issue of

material fact exists; if both parties fail to carry their respective burdens, the court must deny

[both] motions."  See Quarles v. Palakovich, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing

Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)).

III.    STATEMENT OF MATERIAL FACTS[3]

On April 25, 2018, Defendants Kauert and Muthler conducted a random search of Plaintiff's cell.  (Doc. No. 66 ¶ 4.)  During the search, Plaintiff was found to be in possession of legal and non-legal materials related to several cases, and these materials were confiscated.[4]  (Id. ¶ 5.)  A bottle of allergy medicine was also confiscated.  (Id. ¶ 6.)

Defendant Kauert issued Misconduct #D11013 to Plaintiff, charging him with possession of contraband, including non-prescribed drugs, and possession of legal material and grievances

---

[3] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the background herein is derived from Plaintiff and Defendants' Rule 56.1 statements of facts.  (Doc. Nos. 58-1, 66.)  The Court notes, however, that Plaintiff's statement of facts (Doc. No. 58-1 does not fully comply with Local Rule 56.1 because many of his statements contain no references to the record.  The Court, therefore, will only consider those facts presented by Plaintiff that are properly supported by record citations.  See Coit v. Fisher, No. 1:18-cv-2439, 2020 WL 4260762, at *2 n.3 (M.D. Pa. July 24, 2020) (citing Lynch v. Ducasse, No. 3:18-cv-2044, 2020 WL 3547375, at *2 (M.D. Pa. June 30, 2020)).  Accordingly, the Court recites the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

[4] Defendants state that these materials were related to cases not filed by Plaintiff.  (Doc. No. 66 ¶ 5.)  Plaintiff disagrees, stating that several of the documents were evidence for various civil actions he had pending at the time.  (Doc. No. 69 ¶ 5.)

of others.[5]  (Id. ¶ 7.)  Plaintiff received a sanction of thirty (30) days' cell restriction.[6]  (Id. ¶ 8.)

Moreover, the contraband was to be reviewed by Security.  (Id. ¶ 9.)  Plaintiff appealed the

sanction, first to the PRC and then to Defendant Garman.  (Id. ¶ 10.)  Defendant Garman rejected

Plaintiff's appeal as untimely, and Plaintiff appealed to the Office of the Chief Hearing

Examiner.  (Id. ¶¶ 11-12.)

Plaintiff filed Grievance #746684 regarding the alleged destruction of his property.  (Id.

¶ 13.)  He was called to the Security Office and the materials were returned to him.[7]  (Id. ¶ 14.)

According to Department of Corrections ("DOC") policy, "contraband is defined to include

items, such as, property belonging to another inmate, expired non-prescribed medications, or

prescribed medication removed from its original packaging."[8]  (Id. ¶ 15.)  If an inmate breaks a

DOC or facility rule, he may be issued a misconduct.  (Id. ¶ 16.)  "Issues concerning a specific

inmate misconduct charge or statements written within a misconduct are to be addressed through

---

[5] Plaintiff states that Misconduct #D110123 was written as a Class 1 misconduct.  (Doc. No. 58-1 ¶ 14.)  He also avers that the charges issued to him were both eligible for informal resolution. (Id. ¶ 15.)  Misconduct #D110123 stated, in part, "Cooper is in possession of several grievances that are format[t]ed in similar manner which would violate Policy DC-804 section 16."  (Id. ¶ 19.)  He avers, however, that section 16 states: "Each grievance must be presented individually. A grievance submitted by one inmate for another inmate or group of inmates is prohibited and will not be processed."  (Id. ¶ 20.)

[6] Defendants aver that the allergy pills were kept from Plaintiff.  (Doc. No. 66 ¶ 8.)  Plaintiff maintains that the allergy pills were never mentioned in the disciplinary hearing report and that they were ultimately returned to him.  (Doc. No. 69 ¶ 8.)

[7] Defendants state that the allergy pills were not returned to Plaintiff.  (Doc. No. 66 ¶ 14.) Plaintiff avers that all of the confiscated items were returned to him provided that he sign a grievance withdrawal form.  (Doc. No. 69 ¶ 14.)

[8] Plaintiff states that he was never sanctioned for medications.  (Id. ¶ 15.)

the appeal process described in DC-ADM 801." (Id. ¶ 17.)  "All other issues must be addressed

through the Inmate Grievance System described in DC-ADM 804."[9]  (Id. ¶ 18.)

## IV.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendants first assert that they are entitled to summary judgment because Plaintiff failed

to exhaust his administrative remedies prior to initiating the above-captioned action.  (Doc. No.

65 at 7-8.)  Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through

the applicable grievance system before initiating a federal civil rights action.  See 42 U.S.C.

§ 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust

irrespective of the forms of relief sought and offered through administrative avenues.").  Section

1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison

conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  See 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  See

Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the

relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section

1997e's exhaustion requirement.  See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).

Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims

---

[9] Defendants maintain that Plaintiff "has failed to produce evidence that he filed a grievance concerning the claims at issue in this litigation."  (Doc. No. 66 ¶ 19.)  Plaintiff avers that he exhausted all administrative remedies available to him prior to initiating this lawsuit but that the "grievance system by prison policy is not available to inmates during a misconduct proceeding." (Doc. No. 69 ¶ 19.)

in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be

excused.  An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievance procedures does not, alone, excuse a failure to exhaust.  See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what circumstances render administrative remedies unavailable to an inmate such that a failure to exhaust may be excused.  See Ross v. Blake, 136 S. Ct. 1850 (2016).  The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859.  First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  See id.  Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use."  See id.  Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation."  See id. at 1860.  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such

11

remedies were unavailable to him."  See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir.

2018).  The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

See Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that "[i]ssues concerning a specific inmate misconduct charge or

statements written within a misconduct are to be addressed through the appeal process described

in DC-ADM 801."  (Doc. No. 65 at 8.)  All other issues must be addressed through "the Inmate

Grievance System described in DC-ADM 804."  (Id.)  Defendants argue that "if [Plaintiff]

wished to appeal the numbered charge issued against him or the statements made by [Defendant]

Kauert in the misconduct, then his appeal in accordance with DC-ADM 801 was sufficient."

(Id.)  The aver further, however, that Plaintiff's "claim that the Defendants retaliated against him

in violation of his First Amendment rights should have been addressed through the Inmate

Grievance System (DC-ADM 804) in order for him to exhaust his administrative remedies."

(Id.)

The DOC "has three (3) different administrative remedy processes which collectively

provide an inmate a route to challenge every aspect of confinement."  See Shade v. Pa. Dep't of

Corr., No. 3:16-cv-1635, 2020 WL 1891856, at *3 (M.D. Pa. Apr. 16, 2020).  One administrative

remedy may not be substituted for another.  See id.  Recently, however, the Third Circuit

recognized that "there is a serious question whether . . . DC-ADM-801 and DC-ADM-804 are

available to prisoners as a method to grieve retaliation claims."  See Grisby v. McBeth, 810 F.

App'x 136, 138 n.1 (3d Cir. 2020).  At issue in Grisby was the inmate-plaintiff's claim that he

received a misconduct in retaliation for threatening to report an officer for "rudely den[ying] him a vegetarian meal."  See id. at 137.  The Third Circuit noted "uncertainty regarding the interpretation of DC-ADM-801 and DC-ADM 804 and their interaction, if any, when it comes to retaliation claims."  See id. at 138 n.1.

The undisputed record before the Court indicates that Plaintiff appealed his misconduct and the resultant sanction using the procedures set forth in DC-ADM 801.  However, Defendants have not addressed the "serious question" recognized in Grisby regarding the interpretation of DC-ADM 801 and DC-ADM 804 and their interaction when it comes to retaliation claims.  Given this, the Court finds that Defendants have failed to meet their burden of demonstrating that Plaintiff did not exhaust his administrative remedies, and the Court declines to grant summary judgment on this case.  See Flynn v. Dep't of Corr., No. 3:12-cv-1535, 2021 WL 134206, at *9 (M.D. Pa. Jan. 14, 2021) (concluding same).

### B.    Personal Involvement

Defendants next argue that, "even if the Court were to excuse [Plaintiff's] failure to exhaust, the claims asserted against Defendants Wetzel, Garman, and Muthler should be dismissed due to a lack of personal involvement in any constitutional violation."  (Doc. No. 65 at 8.)  Specifically, Defendants assert that there are no facts "identifying how [Defendant] Wetzel engaged in any misconduct or how and when he was involved in any alleged wrongdoing," and that it is apparent that Plaintiff seeks to hold Defendants Garman and Muthler liable pursuant to the theory of respondeat superior.  (Id. at 9.)

Under Section 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Liability "cannot be

predicated solely on the operation of <u>respondeat</u> <u>superior</u>."  <u>See</u> <u>id.</u>  In other words, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>See</u> <u>Atkinson v. Taylor</u>, 316 F.3d 257, 271 (3d Cir. 2003).

 With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).  As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it.  <u>See</u> <u>C.N. v. Ridgewood Bd. of Educ.</u>, 430 F.3d 159, 173 (3d Cir. 2005); <u>see</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009).  With respect to the first theory, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  <u>See</u> <u>Merring v. City of Carbondale</u>, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).  At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  <u>See</u> <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986).

In his complaint, Plaintiff asserts:

[Defendant] Wetzel is [also] responsible for creating loopholes for his employees, workers[,] and agents that work under his supervision as the Secretary for the "DOC" whereof his staff are not punished for the deprivation of civil rights and therefore because of the grey areas wherein he provides no protections for inmates there are several acts of misconduct that go[] unchecked by "DOC" staff, and as policy maker for such [Defendant] Wetzel has knowledge of the rules, regulations[,] and policies of the "DOC" himself being the <u>author</u> of some if not all of the existing policies."

(Doc. No. 1 ¶ 7.)  Plaintiff also suggests that Defendant Wetzel "knowingly keeps the inmate grievance and misconduct process [devoid] of a way for inmates to seek relief from abusive staff members."  (<u>Id.</u> ¶ 94.)  In his brief in opposition, Plaintiff does not challenge Defendants' arguments regarding his claims against Defendant Wetzel.  While Plaintiff appears to identify the DOC's grievance and misconduct policies as causing the constitutional harm, nothing in the record suggests that Defendant Wetzel was aware of any unreasonable risk created by the policies and was indifferent to such risk.  <u>See</u> <u>Merring</u>, 558 F. Supp. at 547 (citing <u>Sample</u>, 885 F.2d at 1118).  The Court, therefore, will grant summary judgment as to Plaintiff's claims against Defendant Wetzel.

As to Defendant Garman, Plaintiff alleges that he has been placed "on notice of the illegal actions of Rockview staff . . . but [he] condones" such actions.  (Doc. No. 1 ¶ 93.)  He avers that Defendant Garman misled him "about the time constraints of the [misconduct] appeal process" even after Plaintiff told him how Defendants Kauert and Muthler read certain legal documents.  (<u>Id.</u> ¶ 105.)  According to Plaintiff, Defendant Garman tried to convince him that he was not in compliance with the administrative misconduct policy and tried to discourage him from seeking relief "by way of administrative review or by seeking civil relief because of his appeal response" to Plaintiff.  (<u>Id.</u> ¶¶ 106-07.)  However, as the Court has previously stated, Plaintiff cannot hold Defendant Garman liable due to his responses to Plaintiff's appeal of his

misconduct because "participation in after-the-fact review of a grievance or appeal is not enough to establish personal involvement." See Cooper v. Sherman, No. 1:17-cv-2064, 2019 WL 2408973, at *4 (M.D. Pa. June 7, 2019) (citations omitted). The Court, therefore, will grant summary judgment as to Plaintiff's claims against Defendant Garman.

Defendants maintain that Plaintiff's claims against Defendant Muthler are solely based upon "the fact that Muthler was the more senior officer during the cell search." (Doc. No. 65 at 10.) The record, however, establishes that Defendant Muthler participated in the cell search and confiscation of Plaintiff's property. Moreover, Plaintiff avers that "[e]ven if Muthler did not take an active role in retaliating against Plaintiff, Muthler had a duty to intervene when a constitutional violation is taking place in his presence." (Doc. No. 70 at 5.) To prevail on a failure to intervene claim, the plaintiff must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene." See Knight v. Walton, No. 2:12-cv-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (internal quotation marks omitted) (quoting Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002)). Upon review of the record before the Court, a reasonable juror could conclude that Defendant Muthler violated Plaintiff's First Amendment rights by failing to intervene to stop Defendant Kauert's alleged retaliation. The Court, therefore, will not grant summary judgment on the basis that Defendant Muthler lacked personal involvement in the alleged events.

### C.     First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

16

Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied when the adverse action is "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

Defendants concede that Plaintiff engaged in protected activity by filing a lawsuit. (Doc. No. 65 at 11) (citing Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Lakkis v. Lahovski, 994 F. Supp. 2d 624, 636 (M.D. Pa. 2014)). Defendants also concede that Plaintiff suffered

adverse action when Defendant Kauert charged him with a Class I misconduct.[10]  (Id.) (citing
Watson, 834 F.3d at 423).  The Court, therefore, must consider whether Plaintiff has
demonstrated a causal connection between Defendant Kauert's action (and, by extension,
Defendant Muthler's alleged failure to intervene to stop Defendant Kauert's action) and
Plaintiff's act of filing a lawsuit.  While causation may be established by direct or
circumstantial evidence, "motivation is almost never subject to proof by direct evidence."  See
Watson, 834 F.3d at 422.  Thus, motivation is typically demonstrated by "evidence of either (1)
an unusually suggestive temporal proximity between the protected activity and the allegedly
retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."
See id.

Defendants assert that "the only circumstantial evidence to prove a retaliatory motive
presented by [Plaintiff] was that [Defendant] Kauert was performing a security search so he must
have been supervised by Security Lieutenant Sherman who was a named defendant in another
prior lawsuit."  (Doc. No. 65 at 14.)  They argue that Defendant "Kauert was not sent to search
[Plaintiff's] cell because of the legal action filed six months prior nor is their evidence of other
retaliatory animus by [Defendant] Kauert against [Plaintiff] present or that can be inferred during
the intervening six months."  (Id.)  As discussed below, however, Defendants' argument is
misplaced.

In his complaint, Plaintiff does not suggest that the cell search occurred to retaliate
against his filing of a lawsuit six (6) months prior to the search.  Rather, Plaintiff alleges that

---

[10] Defendants maintain further that Defendant Pilosi should be dismissed because Plaintiff "has
failed to identify any actionable adverse action" taken by her.  (Doc. No. 65 at 12.)  The Court,
however, has characterized Plaintiff's claim against Defendant Pilosi as a due process retaliation
claim pursuant to Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002), and, so construed, discusses
that claim infra in Part IV.D.

Defendants Kauert and Muthler retaliated against him by searching his legal work and issuing a fictitious misconduct after learning, through reading his legal work, that he was engaged in active litigation against fellow officers at SCI Rockview.  (Doc. No. 1.)  In the verified complaint, Plaintiff avers that he received the misconduct on the same day that the cell search and confiscation of his legal work and allergy pills occurred.  (Id. ¶ 54.)  Plaintiff reiterates his assertions in the declaration he has provided in support of his motion for summary judgment.  (Doc. No. 58-3 at 40-50.)  Given the record before it, the Court concludes that a reasonable juror could find a causal connection between Defendants Kauert and Muthler's actions and Plaintiff's protected activity of engaging in active litigation.

Defendants argue further that even if Plaintiff establishes a prima facie case of retaliation, the same decision defense defeats his claim.  (Doc. No. 65 at 15.)  They assert that Plaintiff "admits that he had placed his allergy medication from the past year into a different allergy pill bottle that use[d] to be sold by the commissary."  (Id.)  Defendants aver that "[t]he decision to issue the misconduct and sanction [Plaintiff] would still have been made absent the protected conduct for the sheer fact that [Plaintiff] was admittedly in possession of contraband by having non-prescribed drugs," and that there "is a legitimate interest in not allowing inmates to possession non-prescribed drugs, especially those removed from their original packaging."  (Id.)

Plaintiff, however, maintains that Defendants have "chose[n] to separate the misconduct and focus on the allergy pills in the allergy pill bottle."  (Doc. No. 70 at 8.)  He avers that he was only "sanctioned for the legal work" and that everything was returned to him, even the allergy pills.  (Id.)  In his verified complaint, Plaintiff asserts that all of the confiscated items were returned to him.  (Doc. No. 1 ¶¶ 80, 83.)  He reiterates this in his declaration.  (Doc. No. 58-3 at 40-50.)  Defendant Kauert's responses to Plaintiff's interrogatories, however, suggest that the

misconduct was issued because Plaintiff was in possession of excess legal material.  (Doc. No. 58-2 at 68-80.)  The misconduct reflects that Defendant Kauert though that Plaintiff was in possession of contraband legal material that did not belong to him and that he should "have his property re-evaluated for excessive."  (Id. at 1.)

Given the record before the Court, it is the Court's view that there exist genuine issues of material fact regarding whether Defendants Kauert and Muthler retaliated against Plaintiff for engaging in active litigation by searching through and confiscating his legal paperwork and allergy pills and issuing a misconduct.  Such issues of fact will likely turn on a credibility assessment, which the Court may not undertake at this stage.  See Anderson, 477 U.S. at 252. Given the discrepancies noted above, and viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendants Kauert and Muthler's actions were causally connected to Plaintiff's protected activity and that they would not have made the same decision in the absence of such activity.  Accordingly, the Court will deny summary judgment as to Plaintiff's First Amendment retaliation claims against Defendants Kauert and Muthler.

### D.    Fourteenth Amendment Due Process Claim

Plaintiff also claims that he was denied due process for retaliatory reasons during his misconduct proceedings.  (Doc. No. 1 ¶¶ 99-111.)  He avers that Defendant Pilosi gave him "no choice to make a pleading, but only to take a misconduct charge and accept whatever sanction given."  (Id. ¶ 103.)  Plaintiff suggests that the misconduct hearing process, as "exploited by Defendants Kauert, Muthler, Garman, Pilosi, and Wetzel[,] was used to provide a cleanup to justify the illegal actions of Kauert and Muthler."  (Id. ¶ 111.)

Defendants' argument in support of summary judgment is that Plaintiff's sanctions— thirty (30) days' cell restriction and the loss of his allergy pills—do not constitute the requisite

"atypical and significant hardship in relation to the ordinary incidents of prison life." (Doc. No. 65 at 12.) They cite <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), in support of their argument. (<u>Id.</u> at 12.) In <u>Sandin</u>, the Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. <u>See id.</u> at 481. The Court reasoned, <u>inter alia</u>, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. <u>See id.</u> at 485. Accordingly, the Court, focusing on the nature of the punishment instead of on the words of any regulation, held that the procedural protections in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974),[11] were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>See Sandin</u>, 515 U.S. at 486. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>See id.</u> at 484. Here, however, Plaintiff alleges that he was denied due process for retaliatory reasons. As Plaintiff correctly notes, the Third Circuit has held that "[r]etaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest." <u>See Allah</u>, 229 F.3d at 224 (quotations omitted). Thus, Plaintiff's claim is not foreclosed by <u>Sandin</u>.

---

[11] In <u>Wolff</u>, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>See</u> 418 U.S. at 556. However, the Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>See id.</u>

The Third Circuit has recognized that "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." See Smith, 293 F.3d at 653.  Such a procedural due process claim requires threshold proof that the inmate was engaged in constitutionally protected conduct.  See id. (citing Sandin, 515 U.S. at 486); see also Allah, 229 F.3d at 224.  However, even if the discipline is initiated in retaliation for a protected act, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports.  See Smith, 293 F.3d at 653-54; see also Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports.").  Moreover, a retaliatory discipline claim fails when there is "some evidence" to support the determination.  See Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994)).

Plaintiff has submitted copies of the documents relating to his disciplinary proceedings. Defendant Kauert charged him with a violation of #36, possession of contraband, and a violation of #52, "any violation of a rule or regulation in the inmate handbook not specified as a Class 1 misconduct charge—violated legal exemption."  (Doc. No. 58-2 at 1.)  Plaintiff submitted a written statement.  (Id. at 2.)  In the disciplinary hearing report, Defendant Pilosi noted that Plaintiff pled guilty to all charges and that he had submitted a written version and stated, "Price's stuff, he asked me to help him."  (Id. at 3.)  The record reflects that Plaintiff appealed and that the disciplinary decision was upheld throughout the appeal process.  (Id. at 4-12.)

Plaintiff has also submitted Defendant Pilosi's answers to his interrogatories, in which she stated that she has never encouraged an inmate to plead guilty to a misconduct, that she has

never found someone guilty or accepted a plea of guilt if she knows that the inmate is not guilty, and that she "always review[s] the evidence available to [her] before determining the guilt or innocence of an inmate." (Doc. No. 58-3 at 8, 12.) Plaintiff, however, avers in his verified complaint that Defendant Pilosi did not "agree with [Defendant] Kauert and stated that the [grievances] were properly filed and there was no violation of section 16 of the inmate handbook, [but she] however said to Plaintiff 'but [you're] gonna plead guilty to something.'" (Doc. No. 1 ¶ 59.) Plaintiff maintains that Defendant Pilosi instructed him to appeal her decision. (Id. ¶ 60.) Moreover, in a declaration, Plaintiff reiterates that Defendant Pilosi stated that he was going to plead guilty to something. (Doc. No. 58-3 at 45.) Moreover, Plaintiff avers that because she referred the matter to the security office to determine what was contraband, Defendant Pilosi accepted his guilty plea without ever looking at the confiscated items. (Id.)

Given the record before the Court, it is the Court's view that there exist genuine issues of material fact regarding whether Plaintiff received due process with respect to his misconduct proceedings. Such issues of fact will likely turn on a credibility assessment, which the Court may not undertake at this stage. See Anderson, 477 U.S. at 252. Given the discrepancies noted above, and viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff was denied due process with respect to this misconduct. Accordingly, the Court will deny summary judgment as to Plaintiff's retaliatory due process claim against Defendant Pilosi. See Cooper, 2019 WL 2408973, at *8-9 (denying summary judgment with respect to a substantially similar retaliatory due process claim).

## V.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' cross motion for summary judgment (Doc. No. 64) and deny Plaintiff's motion for summary judgment

(Doc. No. 56).  Defendants' cross motion for summary judgment (Doc. No. 64) will be granted with respect to Plaintiff's claims against Defendants Wetzel and Garman and denied with respect to Plaintiff's claims against Defendants Kauert, Muthler, and Pilosi.  An appropriate Order follows.