**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIL COOPER,** | : | |
| **Plaintiff** | : | **No. 1:19-cv-02227** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **MARK GARMAN, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court for resolution is the issue of whether the remaining defendants—i.e.,

Defendants Kauert, Muthler, and Walters (collectively, "Defendants")—have met their burden to

establish the affirmative defense of Plaintiff Jamil Cooper ("Plaintiff")'s failure to exhaust

administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA") before

commencing this action in federal court.  Also before the Court are the parties' pending motions

related to the issue of administrative exhaustion.  (Doc. Nos. 153, 161.)  For the reasons set forth

below, the Court will issue a finding that Defendants have met their burden to establish the

affirmative defense of Plaintiff's failure to exhaust administrative remedies as it relates to some

of Plaintiff's remaining claims in this action.  In addition, the Court will deny the parties'

pending motions.

## I.      BACKGROUND

Plaintiff Jamil Cooper ("Plaintiff"), a state prisoner in the custody of the Pennsylvania

Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution

Rockview in Bellefonte, Pennsylvania ("SCI Rockview").  (Doc. No. 1.)  He commenced the

above-captioned action on December 30, 2019, by filing a pro se complaint pursuant to the

provisions of 42 U.S.C. § 1983 ("Section 1983").  (<u>Id.</u>)  He names as defendants the following

individuals, all of whom appeared to have been employed by the DOC and/or to have worked at

SCI Rockview during the period of time relevant to his claims: John Wetzel ("Wetzel"), the former Secretary of the DOC; Mark Garman ("Garman"), a Facility Manager; Trisha Pilosi n/k/a Trisha Walter ("Pilosi"), a hearing examiner; Muthler ("Muthler"), a corrections officer; and Kauert ("Kauert"), another corrections officer.  (Id.)  In his complaint, Plaintiff claims violations of his constitutional rights—and specifically, his First and Fourteenth Amendment rights—based upon events that allegedly occurred while incarcerated at SCI Rockview.  (Id.)  In support, he asserts factual allegations concerning a search of his cell on April 25, 2018, by Defendants Muthler and Kauert, which resulted in the confiscation of his property and the issuance of a misconduct, as well as a subsequent disciplinary hearing before Defendant Pilosi.  (Id.)

On January 31, 2020, the Court deemed Plaintiff's complaint filed and directed the Clerk of Court to serve, inter alia, a copy of the complaint upon Defendants Wetzel, Garman, Pilosi, Muthler, and Kauert.  (Doc. No. 9.)  In the interest of efficient administrative judicial economy, the Court requested Defendants to waive service pursuant to Federal Rule of Civil Procedure 4(d).  (Id.)  On February 27, 2020, Defendants Wetzel, Garman, Pilosi, Muthler, and Kauert returned their waiver of service, and counsel entered an appearance on their behalf.  (Doc. Nos. 11, 12.)  A few days later, on March 30, 2020, they filed an answer with affirmative defenses to Plaintiff's complaint.  (Doc. No. 13.)  In relevant part, they assert the affirmative defense of Plaintiff's failure to exhaust available administrative remedies.  (Id. at 6, ¶ 6.)  The parties then engaged in discovery.

Following discovery, the parties filed cross-motions for summary judgment.  (Doc. Nos. 56, 64.)  On September 3, 2021, the Court issued a Memorandum and Order denying Plaintiff's motion for summary judgment and granting in part and denying in part Defendants Wetzel, Garman, Pilosi, Muthler, and Kauert's motion for summary judgment.  (Doc. Nos. 74, 75.)  More

specifically, the Court granted their motion with respect to Plaintiff's claims against Defendants Wetzel and Garman,[1] and the Court denied their motion with respect to: (1) Plaintiff's First Amendment retaliation claim against (a) Defendant Kauert for issuing him a misconduct for engaging in constitutionally protected activity and (b) Defendant Muthler for failing to intervene to stop Defendant Kauert's conduct; and (2) Plaintiff's Fourteenth Amendment claim against Defendant Pilosi for denying him due process at his subsequent disciplinary hearing, in further retaliation against him.  (Id.)  In addition, and of particular relevance here, the Court also denied their motion on their administrative exhaustion defense.  (Id. at 13 (concluding that they failed to address the question recognized by the United States Court of Appeals for the Third Circuit in Grisby v. McBeth, 810 F.App'x 136, 138 n.1 (3d Cir. 2020) (unpublished), regarding the interpretation of DC-ADM 801 and DC-ADM 804[2] and "their interaction when it comes to retaliation claims").)

Once the Court resolved the parties' motions for summary judgment, the Court referred this action to the Court's Prisoner Litigation Settlement Program and directed the parties to complete mediation within sixty (60) days.  (Id.)  On November 2, 2021, the court-appointed mediator reported that the parties failed to reach a settlement.  (Doc. No. 77.)  Shortly before the mediator filed his report, Plaintiff filed a motion seeking the appointment of counsel.  (Doc. No. 76.)  On November 15, 2021, the Court issued an Order conditionally granting Plaintiff's motion and directing the Clerk of Court to forward a copy of that Order to the Chair of the Federal Bar Association's Pro Bono Committee.  (Doc. No. 78.)

---

[1]  The Court directed that the Clerk of Court defer the entry of judgment in favor of Defendants Wetzel and Garman until the conclusion of this action.  (Doc. Nos. 74, 75.)

[2]  As discussed more fully below, DC-ADM 801 and DC-ADM 804 are DOC policies and procedures manuals, which govern inmate discipline and inmate grievances, respectively.

However, given the passage of time and unsuccessful attempts to locate counsel to represent Plaintiff in this matter, the Court held a status conference with Plaintiff and defense counsel on May 17, 2022. (Doc. Nos. 84, 86.) During that conference, the Court discussed the status of this case and any outstanding issues before this action proceeded to jury selection and trial. In connection with that discussion, Plaintiff represented that he would like to present the testimony of five (5) individuals at trial—namely, Mr. Diaz-Cruz, Mr. Price, Ms. Griffin, Mr. Sherman, and Mr. Miller. Defendants opposed Plaintiff's request to present such testimony at trial and, as a result, the Court directed Defendants to file a letter-brief outlining their position with respect to Plaintiff's proposed witnesses. (Doc. No. 87.) The Court also scheduled a follow-up status conference for June 14, 2022. (Id.)

Following the Court's status conference, Plaintiff sent correspondence to defense counsel, stating that he would like to add two (2) individuals to his witness list—namely, Mr. Garman and Mr. Dyke. (Doc. No. 88-1.) Thereafter, on June 1, 2022, Defendants filed their letter-brief with the Court, addressing Plaintiff's proposed witnesses (Doc. No. 88) and, on June 14, 2022, the Court held the previously scheduled status conference with the parties. During that conference, it was determined that Plaintiff had not yet received Defendants' letter-brief. Thus, the Court scheduled another status conference for June 24, 2022, to ensure that Plaintiff not only received the letter-brief but had adequate time to review and respond to the letter-brief. (Doc. No. 91.) Plaintiff filed his response on June 24, 2022. (Doc. No. 92.) On that same day, the Court held its previously scheduled status conference with the parties and, in accordance with that conference, the Court directed Defendants to file a response to Plaintiff's letter-brief on or before July 1, 2022. (Doc. No. 94.) As reflected by the docket, Defendants timely filed their response. (Doc. No. 95.)

On July 19, 2022, after Defendants filed their response with the Court, Joseph Gardner Price ("Mr. Price"), Esquire, entered his appearance on behalf of Plaintiff.  (Doc. No. 96.)   In light of his appearance, the Court held a conference call with Mr. Price and defense counsel on August 3, 2022.  (Doc. No. 97.)  During that call, the Court and counsel discussed the status of this case.  In addition, the Court scheduled a follow-up conference call with Mr. Price and defense counsel for August 25, 2022.  (Doc. No. 99.)  In doing so, Mr. Price was afforded additional time to review discovery and to meet and confer with Plaintiff.

During the August 25, 2022 conference call, Mr. Price and defense counsel informed the Court that the parties were engaging in limited discovery and that they would notify the Court if any intervention was necessary.  Following that conference call, the Court issued a Case Management Order, setting pretrial deadlines and a trial date of October 24, 2022.  (Doc. No. 101.)  In accordance with that Order, Defendants filed a motion in limine and supporting brief on September 26, 2022,[3] followed by their pretrial memorandum, proposed jury instructions, and proposed voir dire.  (Doc. Nos. 102 through 106.)  Plaintiff, via Mr. Price, filed his pretrial memorandum, proposed voir dire, and proposed jury instructions on October 3, 2022.  (Doc. Nos. 107 through 109.)

Shortly thereafter, however, Plaintiff filed a Notice, explaining that he "terminated his client attorney relationship" and would like to, therefore, proceed pro se in this action.  (Doc. No. 110.)  Consistent with Plaintiff's request, Mr. Price filed a motion to withdraw his appearance on

---

[3]  Defendants' motion in limine seeks to preclude Plaintiff from seeking damages as a form of relief at trial.  (Doc. Nos. 102, 103.)  This motion was previously stayed by the Court pending resolution of the outstanding issue of whether Defendants have met their burden to establish the affirmative defense of Plaintiff's failure to exhaust administrative remedies.  (Doc. No. 158.) Defendants' motion in limine will remain stayed pending status reports from the parties, as directed in the Court's accompanying Order.

October 11, 2022. (Doc. No. 112.) Defendants concurred in Mr. Price's request, and, the following day, the Court granted Mr. Price's motion to withdraw his representation of Plaintiff. (Doc. No. 113.) The Court also directed that Plaintiff would proceed pro se in this action.[4] (Id.)

In accordance with the Court's August 25, 2022 Case Management Order, the Court held a pretrial conference on October 13, 2022. (Doc. No. 114.) During that conference, the following issues were discussed: exhaustion of administrative remedies; damages; proposed witnesses; and the various pretrial filings that had been submitted by the parties. Because, however, Plaintiff's pretrial filings had been submitted by Mr. Price, and because Plaintiff was now proceeding pro se, the Court sent Plaintiff copies of those filings after the hearing. The Court also sent Plaintiff copies of Defendants' pretrial filings, and directed Plaintiff to review all of the filings that the Court sent him. In addition, the Court scheduled a status call for October 17, 2022, to confirm that Plaintiff received the various filings from the Court.

During the October 17, 2022 status call, Plaintiff confirmed that he received the documents from the Court, but that he needed additional time to review all of the pretrial filings. Thus, on October 19, 2022, the Court directed Plaintiff to review the filings and update the Court on or before October 28, 2022, as to any outstanding issues with respect to those filings. (Doc. No. 117.) The Court also directed Plaintiff to file a response to Defendants' pretrial filings and motion in limine. (Id.) Finally, the Court rescheduled the October 24, 2022 trial to November 1, 2022. (Id.)

---

[4] After Mr. Price entered his appearance on behalf of Plaintiff, he indicated to the Court that Plaintiff would no longer be seeking to present the testimony of his proposed witnesses. As a result, the issues argued in the parties' letter-briefs were rendered moot at that time. However, since proceeding pro se in this matter, Plaintiff has renewed his request to present the testimony of his previously proposed witnesses at trial. As a result, this issue remains pending before the Court.

A few days later, on October 24, 2022, Plaintiff filed a motion in limine "to preclude testimony or evidence relating to Grievance Exhaustion, or Exhaustion pursuant to Department of Corrections Policy 804[,]" as well as a supporting brief.  (Doc. Nos. 119, 120.)  On that same date, the Court directed Defendants to file a brief in response to Plaintiff's motion regarding their position on administrative exhaustion, and, specifically, on their continued assertion of the affirmative defense of Plaintiff's failure to exhaust administrative remedies.  (Doc. No. 122.)  In accordance with the Court's directive, Defendants filed their brief in opposition the following day.  (Doc. No. 123.)

Shortly thereafter, on October 27, 2022, the Court held an in-person status conference with Plaintiff and defense counsel.  (Doc. No. 124.)  During that conference, the Court addressed the issue of administrative exhaustion.  Ultimately, the Court concluded that it was necessary to hold an evidentiary hearing and resolve the outstanding issue related to whether Defendants' have met their burden to establish the affirmative defense of Plaintiff's failure to exhaust administrative remedies before proceeding to trial in this matter.  (Doc. No. 129.)  Therefore, the Court continued the trial, which was scheduled for November 1, 2022, and, instead, held an evidentiary hearing and oral argument on that date.  (Id.)

At the November 1, 2022 hearing, Plaintiff and defense counsel appeared in person.  In addition, Defendants presented the testimony of Michael Bell, a grievance officer with the DOC's Secretary's Office for Inmate Grievances and Appeals (Doc. No. 151 at 3), and Zachary Moslak, the chief hearing examiner for the DOC (id. at 19), as well as the testimony of Plaintiff (id. at 50).  Defendants also sought to admit numerous exhibits into the record, the following of which were admitted: Plaintiff's Misconduct D110123; Inmate Version of Events for Misconduct D110123; Disciplinary Hearing Report for Misconduct D110123; Misconduct

Appeal to Program Review Committee; Program Review Committee Action Sheet; Misconduct Appeal to Facility Manager; Facility Manager Response; Final Appeal to Chief Hearing Examiner; Grievance Number 746684; and DC-ADM 801 and DC-ADM 804.  (Doc. No. 134.) Plaintiff, however, neither sought to submit any exhibits, nor sought an extension of time in which to do so.

During the hearing, the parties disputed whether Plaintiff was required to exhaust his administrative remedies under the DOC policy and procedures manuals set forth in DC-ADM 801 and DC-ADM 804, as argued by Defendants, <u>or</u> whether he was required to only exhaust his administrative remedies under the policy and procedures manual set forth in DC-ADM 801, as argued by Plaintiff.  (Doc. No. 151.)  In connection with this dispute, Defendants presented the aforementioned documentary evidence and testimony to show that Plaintiff was required to pursue remedies under DC-ADM 801 with respect to his Fourteenth Amendment retaliatory due process claim against Defendant Pilosi <u>and</u> DC-ADM 804 with respect to his First Amendment retaliation claim against Defendants Kauert and Muthler.  (<u>Id.</u>)  Although Plaintiff did not call any witnesses or present any documentary evidence during the hearing, he conducted cross-examination of Defendants' witnesses, and he presented his own testimony, in order to show that he was <u>only</u> required to pursue remedies under DC-ADM 801 with respect to his surviving claims against Defendants.  (<u>Id.</u>)

Following that hearing, the Court ordered that, within twenty-eight (28) days of the date of the filing of the official transcript of the hearing, the parties shall file proposed findings of fact and conclusions of law relating to the issue of whether Defendants have met their burden to establish the affirmative defense of Plaintiff's failure to exhaust administrative remedies.  (Doc. No. 135.)  The official transcript was subsequently filed on November 10, 2022.  (Doc. No. 137.)

On that same date, Plaintiff filed, without seeking leave of Court or the permission of Defendants, two (2) affidavits "in support of exhaustion[,]" as well as various exhibits attached to those affidavits.  (Doc. Nos. 138, 139.)  Thereafter, on November 30, 2022, Plaintiff filed a third affidavit "in support of exhaustion[,]" again with various exhibits attached to the affidavit. (Doc. No. 141.)  All three (3) affidavits were executed by Plaintiff's fellow inmates at State Correctional Institution Camp Hill ("SCI Camp Hill").[5]  (Doc. Nos. 138, 139, 141.)

Subsequently, on December 9, 2022, Defendants filed their proposed findings of fact and conclusions of law.  (Doc. No. 147.)  And, on February 24, 2023, following an extension of time (Doc. Nos. 143, 148), Plaintiff filed his proposed findings of fact and conclusions of law (Doc. No. 152).  Three (3) days later, on February 27, 2023, Defendants filed a motion to strike Plaintiff's post-hearing affidavits, as well as a supporting brief.  (Doc. Nos. 153, 154.) Following an extension of time (Doc. Nos. 156, 157), Plaintiff filed a brief in opposition on May 2, 2023 (Doc. No. 159).  Defendants, in turn, filed a reply brief on May 15, 2023.  (Doc. No. 160.)

On October 20, 2023, well after the briefing deadlines on the issue of administrative exhaustion expired, see (Doc. Nos. 148, 157), Plaintiff filed, without leave of Court, a motion for extraordinary relief and supporting brief, reasserting the same arguments that he has set forth in his brief in opposition to Defendants' motion to strike.  (Doc. Nos. 161, 162.)  As reflected by the Court's docket, Defendants did not file a response to Plaintiff's motion, and the time period for doing so has expired.  Thus, the issue of administrative exhaustion, and the parties' pending motions, are ripe for the Court's resolution.

---

[5]  During the period of time surrounding the November 1, 2022 hearing, Plaintiff had been transferred to SCI Camp Hill in order to physically appear before this Court in Harrisburg, Pennsylvania.  Plaintiff has since been transferred back to SCI Rockview.

## II.    LEGAL STANDARD

The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a) (emphasis added).  In other words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"  Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88.  And the applicable "procedural rules are supplied by the individual prisons."  See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ."); see also Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the

grievance procedures will vary from system to system and claim to claim . . . "); Woodford, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ").

A prisoner's failure to follow these procedural rules will result in a procedural default of his claims.  See id. at 230–32 (concluding that the PLRA's exhaustion requirement includes a procedural default component); Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (recognizing this holding in Spruill).  A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him.  See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Downey, 968 F.3d at 305 (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

The failure to exhaust available administrative remedies is an affirmative defense.  See Jones, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi, 904 F.3d at 268 (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  See id. (citation omitted).

Finally, requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the

inmate grievance process to prison administrators, encourage[ ] the development of an

administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e]

the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  See

Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added));

Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an

opportunity to resolve disputes concerning the exercise of their responsibilities before being

haled into court").

## III.    DISCUSSION

As set forth above, before the Court for resolution is the outstanding issue related to

whether Defendants have met their burden to demonstrate Plaintiff's failure to exhaust available

administrative remedies as required by the PLRA before asserting his surviving (1) First

Amendment retaliation claims against Defendants Kauert and Muthler and (2) Fourteenth

Amendment retaliatory due process claim against Defendants pursuant to Section 1983.  See

(Doc. Nos. 129, 135, 147, 152).  Also before the Court are the parties' pending motions related

to the issue of administrative exhaustion.  (Doc. Nos. 153, 161.)  For the reasons set forth below,

the Court will issue a finding that Defendants have met their burden to establish the affirmative

defense of Plaintiff's failure to exhaust available administrative remedies as it relates to some of

Plaintiff's remaining claims in this action.  In addition, the Court will deny the parties' pending

motions.

### A.    Administrative Exhaustion Findings of Fact

#### Facts Concerning DC-ADM 801

1.    DC-ADM 801 is a DOC policy and procedures manual concerning inmate
discipline.  (Doc. Nos. 134-10; 151 at 4.)

2.    The policy statement and the procedures manual for the subject DC-ADM
801 became effective on July 2, 2015.  (Doc. Nos. 134-10 at 1, 5; 151 at

12

20).  Both the policy statement and the procedures manual were in effect during the period of time relevant to Plaintiff's instant Section 1983 claims.  (Doc. Nos. 1; 151 at 20.)

3.    Under DC-ADM 801, it is the express "policy of the [DOC] to operate a disciplinary process that provides clear notice or prohibited behavior, outlines a fundamentally fair hearing process, and establishes consistent sanctions for violations of [DOC] rules and regulations."  (Doc. No. 134-10 at 1 (footnote omitted).)

4.    If an inmate is charged with a misconduct, he is issued a misconduct report.  (Doc. Nos. 151 at 21; 134-10 at 8.)

5.    The misconduct report "is to be used to give notice to the inmate of the rule violation(s) with which he/she has been charged and to report the facts upon which the charges are based."  (Doc. No. 134-10 at 8.)

6.    The misconduct report is to be submitted to the shift commander or officer in charge, which shall then be investigated, as required, reviewed and approved by the shift commander.  (Id. at 9.)

7.    From there, there is a "two path process."  (Doc. No. 151 at 21.) Depending on the seriousness of the offense, the matter can either go through the informal resolution process or the formal hearing process. (Id.)

8.    While less serious offenses are subject to resolution through the informal process, more serious offenses are resolved through the formal hearing process.  (Doc. Nos. 134-10 at 13; 151 at 21.)

9.    If the matter is resolved through the formal hearing process, the inmate is subject to a disciplinary hearing before a hearing examiner, who determines whether the inmate is guilty of the charged misconduct, as well as the sanction imposed, if the inmate is found guilty.  (Doc. No. 134-10 at 24–25.)

10.   In connection with the disciplinary hearing, the inmate may submit a written version of the events, or present that version orally, which shall then become a part of the record.  (Id. at 21.)

11.   Ultimately, the hearing examiner is responsible for fact finding—that is, to review the misconduct report and determine whether the evidence supports the charge or charges.  (Doc. No. 151 at 22.)

12.   In addition, DC-ADM 801 sets forth three (3) levels of review as it relates to inmate discipline.  (Id. at 23; Doc. No. 134-10 at 29–33.)

13.     If an inmate has been found guilty of a misconduct charge, the inmate has fifteen (15) calendar days from the hearing to submit a written appeal to the Program Review Committee for initial review.  (Doc. No. 134-10 at 29.)

14.     There are only three (3) valid grounds for an appeal to the Program Review Committee: (1) the procedures employed were contrary to law or DOC directives or regulations; (2) the punishment is disproportionate to the offense; and/or (3) the findings of fact were insufficient to support the decision.  (Id.; Doc. No. 151 at 23.)

15.     The inmate's appeal to the Program Review Committee "shall include a brief statement of the facts relevant to the appeal."  (Doc. No. 134-10 at 30.)

16.     If an inmate pleads guilty, he may appeal only on the first two (2) grounds.  (Doc. Nos. 134-10 at 29; 151 at 25.)

17.     An appeal challenging the "procedures employed" ground relates to the procedures employed by the hearing examiner during the hearing, not the procedures employed by a staff member in connection with the underlying misconduct.  (Id. at 47–48.)[6]

18.     After the Program Review Committee renders a decision, the inmate has seven (7) calendar days after receiving the decision to submit an appeal to the Facility Manager or designee.  (Doc. Nos. 134-10 at 31; 151 at 24.)

19.     The appeal to the Facility Manger or designee is limited to the same three (3) grounds identified above.  (Doc. No. 134-10 at 31.)

20.     In addition, the inmate's appeal to the Facility Manager "shall include a brief statement of the facts relevant to the appeal."  (Doc. No. 134-10 at 31.)

21.     Once the Facility Manager or designee issues his written decision, the inmate has seven (7) working days after receiving the decision to appeal to the DOC Chief Hearing Examiner's Office, which provides the third and

---

[6] Plaintiff appears to confuse these issues.  See, e.g., (Doc. No. 152 at 4 (containing Plaintiff's proposed findings of fact and conclusions of law wherein he argues that DC-ADM 801 suggests that an inmate is permitted to file an appeal concerning conduct related to the underlying misconduct, such as a corrections officer's alleged retaliation and failure to intervene, and citing to the "procedures employed" provision).)  As set forth above, this provision pertains to the procedures employed by the hearing examiner, not any procedures employed by the corrections officers/staff members in the underlying misconduct.  (Id. at 47–48.)

final level of review for DC-ADM 801.  (<u>Id.</u> at 31–32; Doc. No. 151 at 24.)

22.    The inmate's appeal to the final level of review is limited to the same three (3) grounds identified above.  (Doc. No. 134-10 at 31.)

23.    The inmate's appeal to final review "shall include a brief statement of the facts relevant to the appeal."  (<u>Id.</u> at 32.)

24.    Under DC-ADM 801, the relief available includes: dismissing the misconduct outright; dismissing the misconduct without prejudice; upholding the decision; reducing the sanction; or remanding the matter to the hearing examiner.  (Doc. No. 151 at 26.)

### **Facts Concerning DC-ADM 804**

25.    DC-ADM 804 is a DOC policy and procedures manual concerning inmate grievances.  (Doc. Nos. 134-11;151 at 4.)

26.    The policy statement of the subject DC-ADM 804 became effective May 1, 2015 (Doc. Nos. 134-11 at 1; 151 at 4), and the procedures manual became effective on February 16, 2016 (Doc. Nos. 134-11 at 4; 151 at 5). Both the policy statement and procedures manual were in effect during the period of time relevant to Plaintiff's instant Section 1983 claims.  (Doc. Nos. 1; 151 at 5–6.)

27.    Under DC-ADM 804, it is the express "policy of the [DOC] that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal."  (Doc. No. 134-11 at 1.)

28.    This formal procedure is referred to by the DOC as the "Inmate Grievance System."  (<u>Id.</u>)

29.    "The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate."  (<u>Id.</u> at 4.)

30.    However, "[i]t is not meant to address incidents of an urgent or emergency nature[,] including allegations of sexual abuse."  (<u>Id.</u>)

31.    In addition, "[i]ssues concerning a specific inmate misconduct charge, ***conduct of hearing*, *statements written within a misconduct and/or other report***, a specific disciplinary sanction, and/or the reasons for placement in

administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 801, 'Inmate Discipline'** and/or **DC-ADM 802, 'Administrative Custody Procedures.'**  Issues other than specified above must be addressed through the Inmate Grievance System."  (<u>Id.</u> at 5 (emphasis in original); Doc. No. 151 at 6).)

32.     The Inmate Grievance System is comprised of three (3) separate steps. (Doc. Nos. 134-11 at 4–33; 151 at 8.)

33.     "When an inmate has a concern that he/she is unable to resolve[,]" (<u>id.</u> at 4), the first step of the Inmate Grievance System is that the inmate is required to submit a grievance to the Facility Grievance Coordinator or designee, usually the Superintendent's Assistant, within fifteen (15) working days after the event upon which the grievance is based.  (Doc. No. 134-11 at 4–14; <u>id.</u> at 5–6 (specifying various requirements as to the contents of a grievance).)

34.     Upon receipt of a grievance, the Facility Grievance Coordinator or designee assigns it a grievance tracking number and enters it into the Automated Inmate Grievance Tracking System.  (<u>Id.</u> at 9; Doc. No. 151 at 8–9.)

35.     If the Facility Grievance Coordinator or designee determines that the grievance has not been properly submitted according to DC-ADM 804, the grievance is rejected and returned to the inmate with a grievance rejection form, explaining the reason or reasons for the rejection.  (Doc. No. 134-11 at 10.)

36.     If the Facility Grievance Coordinator or designee determines, however, that the grievance has been properly submitted according to DC-ADM 804, he or she will designate a staff member to serve as the grievance officer for that grievance.  (<u>Id.</u> at 9.)

37.     Once the inmate receives an initial review response/rejection from the designated grievance officer, the second step of the Inmate Grievance System is that the inmate is required to appeal that response/rejection to the Facility Manager or designee within fifteen (15) working days from the date of the initial review response/rejection.  (<u>Id.</u> at 15–18.)

38.     Finally, the third step of the Inmate Grievance System is that, once the inmate receives the Facility Manager/designee's decision, the inmate is required to appeal the Facility Manager/designee's decision for final review at the Secretary's Office of Inmate Grievance and Appeals within

16

fifteen (15) working days of the date of the Facility Manager/designee's decision.  (Id. at 18–23.)

**Facts Concerning Plaintiff's Use of DC-ADM 801 Procedures**

39. Plaintiff was issued Misconduct D110123 on April 25, 2018.  (Doc. No. 134-1.)

40. As part of the misconduct process, Plaintiff was provided the opportunity to submit a written version of the events to the hearing examiner prior to the disciplinary hearing.  (Doc. Nos. 134-2; 151 at 56.)

41. In his written version of the events, Plaintiff claims that Defendant Kauert's reading of his legal materials "inspired" the issuance of Misconduct D110123.  (Doc. No. 134-2.)  In asserting this claim against Defendant Kauert, Plaintiff does not specifically reference "retaliation." (Id.)

42. Additionally, in his written version of the events, Plaintiff does not identify Defendant Muthler or describe his participation, in any way, in the April 25, 2018 cell search, including any alleged failure to intervene when Defendant Kauert allegedly violated Plaintiff's rights.  (Doc. Nos. 134-2; 151 at 57.)

43. Plaintiff was then provided a disciplinary hearing before Defendant Pilosi, the hearing examiner, with regard to Misconduct D110123.  (Doc. No. 134-3; 151 at 57.)

44. In his complaint in this Section 1983 action, Plaintiff claims that Defendant Pilosi told him: "[b]ut your [sic] gonna plead guilty to something" and that he should just appeal her decision.  (Doc. No. 1 ¶¶ 59–60.)

45. Following the hearing, Plaintiff appealed Defendant Pilosi's decision for an initial review.  (Doc. Nos. 134-4; 151 at 59.)

46. In his appeal for initial review, Plaintiff does not claim that Defendant Pilosi forced him to plead guilty.  (Id.; Doc. No. 151 at 61.)

47. Additionally, in his appeal for initial review, Plaintiff does not claim that Defendant Kauert issued him a misconduct in "retaliation" for what Defendant Kauert read in his legal materials.  (Doc. Nos. 134-4; 151 at 60–61.)  However, Plaintiff states, as he did in his written version of the events, that Defendant Kauert's reading of his legal materials "inspired" the issuance of the misconduct.  (Doc. No. 134-4.)

48.     Further, in his appeal for initial review, Plaintiff does not identify Defendant Muthler or describe his participation, in any way, in the April 25, 2018 cell search, including any alleged failure to intervene when Defendant Kauert allegedly violated Plaintiff's rights.  (Id.)

49.     Plaintiff received a response from the Program Review Committee for his initial appeal.  (Doc. Nos. 134-5; 151 at 61–62.)

50.     The Program Review Committee denied Plaintiff's response because he pled guilty during the disciplinary hearing.  (Doc. Nos. 134-5; 151 at 62.)

51.     Plaintiff appealed the Program Review Committee's response to the Facility Manager.  (Doc. Nos. 134-6; 151 at 62.)

52.     In his appeal to the Facility Manager, Plaintiff "restate[d]" what was asserted in his written version of the events that he submitted to Defendant Pilosi in connection with his hearing.  (Doc. No. 134-6.)

53.     Additionally, in his appeal to the Facility Manager, Plaintiff does not claim that Defendant Kauert issued him a misconduct in "retaliation" for what Defendant Kauert read in his legal materials.  (Id.; 151 at 64.) However, Plaintiff discusses how Defendant Kauert read through his legal materials.  (Id.)

54.     Further, in his appeal to the Facility Manager, Plaintiff does not identify Defendant Muthler or describe his participation, in any way, in the April 25, 2018 cell search, including any alleged failure to intervene when Defendant Kauert allegedly violated Plaintiff's rights.  (Id.)

55.     In his appeal to the Facility Manager, Plaintiff does not claim that Defendant Pilosi forced him to plead guilty.  (Id.)

56.     Plaintiff received a response from his appeal to the Facility Manager. (Doc. Nos. 134-7; 151 at 64–65.)

57.     The Facility manager denied Plaintiff's appeal as untimely.  (Doc. No. 134-7.)

58.     Plaintiff appealed the Facility Manager's response to the Chief Hearing Examiner's Office.  (Doc. Nos. 134-8; 151 at 66.)

59.     In his appeal to the Chief Hearing Examiner's Office, Plaintiff does not claim that Defendant Kauert issued him a misconduct in "retaliation" for what Defendant Kauert read in his legal materials.  (Id.; Doc. No. 151 at 67.)  However, Plaintiff discusses how Defendant Kauert read through his

various legal materials, and he explicitly references his prior appeals, wherein, as set forth above, he mentioned that the misconduct was "inspired" by Defendant Kauert reading through those materials.  (Doc. No. 134-8.)

60.     Additionally, in his appeal to the Chief Hearing Examiner's Office, Plaintiff does not identify Defendant Muthler or describe his participation, in any way, in the April 25, 2018 cell search, including any alleged failure to intervene when Defendant Kauert allegedly violated Plaintiff's rights. (Id.)

61.     In his appeal to the Chief Hearing Examiner's Office, Plaintiff does not claim that Defendant Pilosi forced him to plead guilty.  (Id.)

62.     Plaintiff received a response from the Chief Hearing Examiner's Office. (Doc. No. 151 at 67, 69–70.)[7]

### Facts Concerning Plaintiff's Use of DC-ADM 804 Procedures

63.     Plaintiff neither filed a grievance under DC-ADM 804 regarding the April 25, 2018 cell search, nor appealed any grievances to final review with the Secretary's Office for Inmate Grievances and Appeals regarding that search.  (Id. at 9, 52, 71–72.)[8]

64.     Plaintiff believed that DOC policy would not permit him to file a grievance because the April 25, 2018 cell search resulted in a misconduct being issued against him.  (Id. at 50, 74.)  Specifically, Plaintiff believed that the only avenue for relief available to him was to pursue relief through DC-ADM 801.  (Id.)

---

[7]  The Chief Hearing Examiner Office's response was identified at the evidentiary hearing, but not admitted into the record.  (Doc. No. 134.)

[8]  The only grievance that Plaintiff filed that is tangentially relevant is the grievance he filed on July 13, 2018 (Doc. No. 134-9), concerning his paperwork that was allegedly confiscated during his April 25, 2018 cell search and may have subsequently been lost or destroyed.  (Id.)  Plaintiff concedes, however, that this grievance is not relevant to the remaining claims in this litigation. (Doc. No. 151 at 72–73.)

**B.**     **Administrative Exhaustion Conclusions of Law**

### The PLRA

1.      The PLRA prohibits an inmate from commencing suit concerning "prison conditions . . . until such administrative remedies as are available are exhausted[.]"  See 42 U.S.C. 1997e(a).

2.      As a result, exhaustion of available administrative remedies is a prerequisite for Plaintiff to assert First and Fourteenth Amendment claims against Defendants under Section 1983.  See Ross, 578 U.S. at 638; Jones, 549 U.S. at 211; Booth, 532 U.S. at 733–34.

3.      Defendants bear the burden of demonstrating that Plaintiff failed to exhaust his available administrative remedies with respect to this lawsuit. See Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013); Rinaldi, 904 F.3d at 268.

4.      If Defendants establish that Plaintiff failed to resort to administrative remedies, the onus falls on Plaintiff to demonstrate that such remedies were unavailable to him.  See id.

### The Two (2) Avenues for Relief

5.      When looked at as a whole, it is understood that DC-ADM 801 operates like a criminal process where charges and evidence are gathered, put into a report, and submitted to the hearing examiner; whereas, DC-ADM 804 operates like a civil process where complaints are made regarding institutional operations and conditions of confinement.  (Id. at 30, 46.) However, this overarching concept is not written explicitly within the policies and/or procedures manuals themselves.  (Doc. Nos. 134-10, 134-11.)

6.      Additionally, if an inmate believes that he was retaliated against by receiving a misconduct, he can potentially (a) pursue DC-ADM 801 regarding the misconduct and (b) separately pursue DC-ADM 804 regarding his other concerns, such as retaliation.  (Doc. No. 151 at 10–12, 17–18, 32.)  However, while an inmate can potentially pursue both avenues of relief in this context (id.), neither DC-ADM-801 nor DC-ADM 804 explicitly states that an inmate is required to pursue both in order to properly comply.

7.      Moreover, the plain language of DC-ADM 804 creates a clear separation from DC-ADM 801 by specifying that "[i]ssues concerning a specific inmate misconduct charge, ***conduct of hearing***, ***statements written within a misconduct and/or other report***, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed

through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 801, 'Inmate Discipline'** and/or **DC-ADM 802, 'Administrative Custody Procedures.'**" (Doc. No. 134-11 at 5 (emphasis in original).)

## **DC-ADM 801**

8. DC-ADM 801 provides three (3) levels of appeal for inmates to follow concerning the DOC's Inmate Discipline Process: (1) first level appeal to the Program Review Committee; (2) second level appeal to the Facility Manager; and (3) third level appeal to the Chief Hearing Examiner's Office. (Doc. No. 134-10 at 29, 31–32.)

9. Throughout each level, the inmate's appeal "shall include a brief statement of the facts relevant to the appeal[,]" as well as the issues raised. (Doc. No. 134-10 at 30–32.)

10. DC-ADM 801 generally applies to the inmate disciplinary process—i.e., misconducts and subsequent disciplinary proceedings. (Doc. No. 134-10.)

11. Consistent with the scope of DC-ADM 801, DC-ADM 804 specifies that "[i]ssues" concerning misconduct charges must be addressed through DC-ADM 801. (Doc. No. 134-11 at 5 (emphasis in original).)

12. Here, Defendants established that Plaintiff pursued relief under DC-ADM 801. However, Defendants also established that, although Plaintiff submitted a written version of the events and pursued all three (3) levels of appeal under DC-ADM 801, nowhere in his submissions did he (a) identify Defendant Muthler either by name or title or describe any conduct, whatsoever, concerning Defendant Muthler, or (b) assert any claim that he was forced to plead guilty at his disciplinary hearing or that Defendant Pilosi, or more generally, the hearing examiner, forced him to do so.

13. Thus, Defendants established that Plaintiff failed to exhaust his available administrative remedies under DC-ADM 801 with respect to Defendants Muthler and Pilosi. Specifically, Plaintiff failed to put prison officials on notice that he sought to hold Defendants Muthler and Pilosi accountable for any wrongful conduct, much less the allegedly wrongful conduct relevant to this litigation. See generally Mack v. Warden Loretto FCI, 839 F.3d 286, 295 (3d Cir. 2016) (explaining that when a policy is "silent or vague" regarding the level of detail required in a grievance, an inmate

must at least "alert[ ] the prison to the nature of the wrong for which redress is sought.").[9]

14.  Plaintiff did not meet his burden of proof to show that administrative remedies were unavailable to him under DC-ADM 801.

15.  However, Defendants have not established that Plaintiff failed to exhaust available administrative remedies under DC-ADM 801 with respect to Defendant Kauert on the asserted basis that he did not include the term "retaliation" in his appeals.  (Doc. No. 147 ¶¶ 60, 66, 71.)

16.  Although Plaintiff did not include the term "retaliation[,]" his appeals provided notice of his retaliation claim against Defendant Kauert in that Plaintiff asserted allegations that Defendant Kauert's misconduct was "inspired" by Plaintiff's legal paperwork that Defendant Kauert read through when he conducted the search of Plaintiff's cell on April 25, 2018. (Doc. Nos. 134-2; 134-4); see Mack, 839 F.3d at 296 (concluding that the inmate did not need to include details concerning his "allegedly protected speech" where he had sufficiently notified prison officials that he believed he had been unlawfully terminated as retaliation for exercising his First Amendment rights); see also Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) (stating that "the primary purpose of a grievance is to alert prison officials to a problem . . ." (citation and internal quotation marks omitted)).

## DC-ADM 804

17.  DC-ADM 804 provides a three (3)-step process for inmates to follow concerning the DOC's Inmate Grievance System: (1) a grievance at the initial level; (2) an appeal to the facility manager; and (3) an appeal to the Secretary's Office of Inmate Grievance and Appeals for final review. (Doc. Nos. 134-11 at 4–33; 151 at 8.)

18.  DC-ADM 804 applies broadly to most problems, issues, or concerns of DOC inmates arising during the course of their confinement.  (Doc. No. 134-11 at 1, 4.)  But, it does not apply to "[i]ssues" concerning misconduct charges.  (Doc. No. 134-11 at 5.)

---

[9]  Plaintiff argues that the various levels of appeals under DC-ADM 801 do not require an inmate to contain the same level of detail that is set forth in DC-ADM 804, concerning an initial grievance.  (Doc. No. 152 at 4–5.)  The Court agrees with Plaintiff's assessment.  However, this does not change the fact that an inmate's appeals under DC-ADM 801 must at least notify prison officials of the general issues for which redress is sought.  Indeed, this is a basic principle of exhaustion.

19.     Defendants established that Plaintiff did not file any grievances concerning the alleged conduct of Defendants Kauert and Muthler with respect to the April 25, 2018 cell search.  (Doc. No. 151 at 9, 52, 71–72.)

20.     However, Defendants have not met their burden to show that Plaintiff was <u>required</u> to file a grievance under DC-ADM 804 where the express language of DC-ADM 804 excludes grievances related to "[i]ssues" concerning misconduct charges. (Doc. No. 134-11 at 5.)

21.     Here, Plaintiff's "issues" with his relevant misconduct charges (<u>i.e.</u>, that they were the product of, and permitted by, retaliation) fall within this express exclusion.  As such, Defendants have not met their burden to demonstrate that Plaintiff failed to exhaust available administrative remedies under DC-ADM 804.

22.     Accordingly, Defendants have not met their burden to show that Plaintiff was required to file a grievance under DC-ADM 804 with respect to his First Amendment claims against Defendants Kauert and Muthler.[10]

---

[10]  That said, the Court notes that Defendants have set forth a persuasive position concerning the interplay between DC-ADM 801 and DC-ADM 804—<u>i.e.</u>, that when these policies and procedures manuals are looked at, as a whole, DC-ADM 801 operates more like a criminal process where charges and evidence are gathered, put into a report, and submitted to the hearing examiner; whereas, DC-ADM 804 operates more like a civil process where complaints are made regarding institutional operations and conditions of confinement.  (Doc. No. 151 at 30, 46.)  Under Defendants' position, it follows that alleged constitutional violations, including a retaliation claim, would fall under DC-ADM 804, and that claims related to inmate disciplinary proceedings would fall under DC-ADM 801.  However, Defendants' position has not squarely addressed the express exclusion contained in DC-ADM 804, which does not permit consideration of grievances related to "<u>issues</u> concerning a specific inmate misconduct charge[.]" (Doc. No. 134-11 at 5.)  In other words, but for this express exclusion, the Court would be inclined to agree with Defendants that Plaintiff was required to exhaust his First Amendment retaliation claims against Defendants Muthler and Kauert under DC-ADM 804.  However, because this express exclusion exists, and because Defendants have not shown that it does not apply here, it is fatal to their DC-ADM 804 exhaustion argument.  Accordingly, while Defendants cite to <u>Saleem v. Brungart</u>, No. 2020-1610, 2022 WL 17336208, *2 (3d Cir. Nov. 30, 2022) (unpublished) for the proposition that Plaintiff should have filed his retaliation claims under DC-ADM 804, the Court notes that the <u>Saleem</u> Court neither addressed the specific language at issue here (<u>i.e.</u>, the express exclusion contained in DC-ADM 804), nor was presented with a claim that the subject misconduct charge was issued in retaliation for the plaintiff engaging in constitutionally protected activity.  In addition, the <u>Saleem</u> Court specifically noted that DC-ADM 801 "is oriented toward <u>concerns relating to a misconduct</u> or resulting proceedings."  <u>See id.</u> at *1 n.2 (emphasis added); <u>see id.</u> at *3 (remarking that the written grievance rejection under DC-ADM 804 directed the plaintiff "to raise his challenges related to the misconduct via DC-ADM 801").  For these reasons, Defendants' citation to <u>Saleem</u> is unpersuasive.

**Final Conclusions**

23. Defendants have not met their burden to show that Plaintiff was required to file a grievance under DC-ADM 804 with respect to any of his remaining Section 1983 claims—i.e., his First Amendment retaliation claims against Defendant Kauert and Muthler and his Fourteenth Amendment retaliatory due process claim against Defendant Pilosi.

24. Defendants have met their burden to show that Plaintiff was required to file a grievance under DC-ADM 801 with respect to all of his remaining Section 1983 claims.

25. Plaintiff exhausted available administrative remedies under DC-ADM 801 with respect to his First Amendment retaliation claim against Defendant Kauert.

26. Plaintiff did not exhaust available administrative remedies under DC-ADM 801 with respect to his First Amendment retaliation claim against Defendant Muthler or his Fourteenth Amendment retaliatory due process claim against Defendant Pilosi.

27. Plaintiff did not establish that administrative remedies were unavailable to him with respect to his First Amendment retaliation claim against Defendant Muthler or his Fourteenth Amendment retaliatory due process claim against Defendant Pilosi.

28. Because it was a prerequisite under the PLRA for Plaintiff to exhaust available administrative remedies before asserting his First Amendment retaliation claim against Defendant Muthler and his Fourteenth Amendment retaliatory due process claim against Defendant Pilosi under Section 1983, Plaintiff may not proceed on these claims. See Ross, 578 U.S. at 638; Jones, 549 U.S. at 211; Booth, 532 U.S. at 733–34.

29. Plaintiff may proceed only on his First Amendment retaliation claim against Defendant Kauert.

**D.  Defendants' Motion to Strike**

Following the evidentiary hearing held on November 1, 2022, Plaintiff filed, without

permission from Defendants or leave of Court, three (3) affidavits, all of which were executed by

his then-fellow inmates at SCI Camp Hill on November 8th, 9th, and 27th.  (Doc. Nos. 138

(containing Inmate Joseph Williams' affidavit, executed on November 9, 2022); 139 (containing

24

Inmate Thurmond Allen's affidavit, executed on November 8, 2022); 141 (containing Inmate Curtis Koehler's affidavit, executed on November 27, 2022).)  In those affidavits, the inmates set forth various statements concerning their own experiences with grievances that they filed in connection with misconducts they have received from prison officials in the DOC.  (Doc. Nos. 138, 139, 141.)  In addition, attached to their affidavits are some of the underlying documentation concerning those grievances and/or misconducts.  (Id.)

From what the Court can discern, Plaintiff offers the inmates' affidavits and attached documentation to demonstrate that he was not required to file a grievance under DC-ADM 804 in order to exhaust his First Amendment retaliation claims against Defendants Kauert and Muthler because the only avenue for relief available to him was to file a grievance under DC-ADM 801.  See (id.).  As discussed above, the Court has determined, based upon the evidence presented at the November 1, 2022 hearing, that Defendants did not meet their burden to show that Plaintiff was required to file a grievance under DC-ADM 804 in order to exhaust these claims against Defendants Kauert and Muthler.  Thus, the Court made this determination without relying on either Plaintiff's post-hearing affidavits or the documents attached to those affidavits. Accordingly, to the extent that Defendants move to strike Plaintiff's post-hearing affidavits and/or attached documentation, their motion will be denied as moot.

However, in response to Defendants' motion to strike, Plaintiff filed a brief in opposition addressing not only Defendants' arguments concerning his post-hearing affidavits and attached documentation, but also the issue of administrative exhaustion.  More specifically, Plaintiff argues that: (1) the Court has already determined the issue of administrative exhaustion at the summary judgment stage of this litigation and that, therefore, the November 1, 2022 evidentiary hearing on this issue was not proper; and (2) he was not prepared for the evidentiary hearing or

25

provided the opportunity to present witnesses or evidence at the evidentiary hearing.  (Doc. No. 159.)  Plaintiff has also asserted these two (2) arguments in his pending motion for extraordinary relief.  (Doc. No. 161.)  Because Plaintiff's filings contain overlapping issues, his filings will be addressed together.

### 1.    Plaintiff's First Argument

In connection with his first argument—i.e., that it was not proper for the Court to hold an evidentiary hearing on the issue of administrative exhaustion given that the Court already addressed the issue at the summary judgment stage of this litigation—Plaintiff contends that the law of the case doctrine should have precluded reconsideration of this issue.  (Doc. Nos. 159 at 2–3; 162 at 6–7.)  The law of the case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  See In re Cont'l Airlines, Inc., 279 F.3d 226, 233 (3d Cir. 2002) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).  This doctrine "'promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.'"  See id. (quoting Christianson, 486 U.S. at 816); In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir. 2009) (explaining that "[l]aw of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit" (citations and internal quotation marks omitted)).

It is settled that the "doctrine does not restrict a court's power but rather governs its exercise of discretion."  See id. (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir. 1997)).  In exercising that discretion, a court can reconsider a previously decided issue if extraordinary circumstances exist, "such as if new evidence becomes available, a supervening law has been introduced, or the prior decision

was clearly erroneous and would create manifest injustice." See Walker v. Coffey, 956 F.3d 163, 170 (3d Cir. 2020) (citation and internal quotation marks omitted).

With these principles in mind, the Court turns to its prior decision at the summary judgment stage of this litigation concerning Defendants' asserted exhaustion defense.  In relevant part, that decision provides as follows:

> Defendants maintain that "[i]ssues concerning a specific inmate misconduct charge or statements written within a misconduct are to be addressed through the appeal process described in DC-ADM 801." (Doc. No. 65 at 8.) All other issues must be addressed through "the Inmate Grievance System described in DC-ADM 804." (Id.)  Defendants argue that "if [Plaintiff] wished to appeal the numbered charge issued against him or the statements made by [Defendant] Kauert in the misconduct, then his appeal in accordance with DC-ADM 801 was sufficient." (Id.) The aver further, however, that Plaintiff's "claim that the Defendants retaliated against him in violation of his First Amendment rights should have been addressed through the Inmate Grievance System (DC-ADM 804) in order for him to exhaust his administrative remedies." (Id.)

> The DOC "has three (3) different administrative remedy processes which collectively provide an inmate a route to challenge every aspect of confinement." See Shade v. Pa. Dep't of Corr., No. 3:16-cv-1635, 2020 WL 1891856, at *3 (M.D. Pa. Apr. 16, 2020). One administrative remedy may not be substituted for another. See id. However, the Third Circuit recognized that "there is a serious question whether . . . DC-ADM-801 and DC-ADM-804 are available to prisoners as a method to grieve retaliation claims." See Grisby v. McBeth, 810 F. App'x 136, 138 n.1 (3d Cir. 2020). At issue in Grisby was the inmate-plaintiff's claim that he received a misconduct in retaliation for threatening to report an officer for "rudely den[ying] him a vegetarian meal." See id. at 137. The Third Circuit noted "uncertainty regarding the interpretation of DC-ADM-801 and DC-ADM 804 and their interaction, if any, when it comes to retaliation claims." See id. at 138 n.1.

> The undisputed record before the Court indicates that Plaintiff appealed his misconduct and the resultant sanction using the procedures set forth in DC-ADM 801. However, Defendants have not addressed the "serious question" recognized in Grisby regarding the interpretation of DC-ADM 801 and DC-ADM 804 and their interaction when it comes to retaliation claims. Given this, the Court finds that Defendants have failed to meet their burden of demonstrating that Plaintiff did not exhaust his administrative remedies, and the Court declines to grant summary judgment on this case. See Flynn v. Dep't of Corr., No. 3:12-cv-1535, 2021 WL 134206, at *9 (M.D. Pa. Jan. 14, 2021) (concluding same).

(Doc. No. 74 at 12–13.)

In connection with the Court's decision at the summary judgment stage, Defendants notified the Court at the October 13, 2022 pretrial conference that they would be prepared to present testimony at trial in order to address the outstanding exhaustion issue in this matter. Specifically, they sought to address the interplay between DC-ADM 801 and DC-ADM 804 in order to preserve their affirmative defense of Plaintiff's failure to exhaust. Although Defendants acknowledged that they did not anticipate this issue going before the jury, their intent was to present this evidence to the Court at trial.

Following the October 13, 2022 pretrial conference, the Court held an in-person conference at which the Court notified the parties that an evidentiary hearing was necessary to resolve the outstanding exhaustion issue. The Court explained that it was most judicious to conduct the hearing outside of the jury and in advance of trial—this was especially appropriate considering that resolution of such issues could potentially avoid a trial in this matter. See Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 224 (3d Cir. 2009) (explaining that "courts; resources are limited and they should not be required to use those resources to conduct an unnecessary trial . . . ").

Thus, given this background, the Court finds that it is not reconsidering an issue of law that has already decided, but rather, it is resolving an outstanding issue that was previously identified by the Court but not addressed by Defendants in connection with their asserted affirmative defense. While the Court's decision left the issue unresolved, that decision did not negate Defendants' subsequent ability to continue to assert their affirmative defense of Plaintiff's failure to exhaust administrative remedies. Indeed, Defendants have been steadfast in asserting this defense since the commencement of the lawsuit. (Doc. No. 13 at 6, ¶ 6 (containing

Defendants' answer to Plaintiff's complaint wherein they claim the affirmative defense of Plaintiff's failure to exhaust available administrative remedies).)  Moreover, in conducting an evidentiary hearing on these exhaustion issues, Defendants submitted new documentary evidence into the record and presented new testimony from relevant DOC officials, as well as testimony from Plaintiff.  As a result, the Court finds that it has a different evidentiary record before it than it previously had at the summary judgment stage of this litigation.

Accordingly, for these reasons, the Court concludes that the law of the case doctrine neither precluded the Court from having held the November 1, 2022 evidentiary hearing, nor currently precludes it from resolving the unsettled exhaustion issue in this matter. See, e.g., Ingram v. S.C.I. Camp Hill, 448 F. App'x 275, 278 (3d Cir. 2011) (unpublished) (holding that the district court judge did not abuse his discretion in "allowing the defendants to submit a renewed motion for summary judgment on their exhaustion defense[,]" and that he did not violate the law of the case doctrine because the district court judge "notified the parties that he sought a renewed motion to avoid a potentially unnecessary trial . . . " and because the district court judge "was reviewing a different summary judgment record than [the prior judge who had denied the defendants' prior motion for summary judgment] . . . " (citations and internal citation omitted)).

## 2.    Plaintiff's Second Argument

As for Plaintiff's second argument—i.e., that he was unprepared for the evidentiary hearing and not permitted to present witnesses or evidence during the evidentiary hearing (Doc. Nos. 159 at 2, 3; 162 at 6–7)—the Court finds that this argument is disproven by the record.  Not only did the Court explain to the parties during the October 27, 2022 in-person conference that it was necessary to hold an evidentiary hearing and hear oral argument on all outstanding issues

related to exhaustion of administrative remedies in this matter, see (Doc. No. 124), but the

Court's subsequent scheduling order reiterated this explanation, see (Doc. No. 129).  At no point,

however, following that in-person conference or the Court's issuance of its scheduling order, did

Plaintiff make any requests for additional time to submit evidence or assert any argument that he

did not have sufficient time to prepare for the hearing.

Furthermore, during the Court's November 1, 2022 evidentiary hearing, Plaintiff was

afforded the opportunity to present evidence on the issue of administrative exhaustion, as

follows:

> The COURT: All right.  Mr. Cooper, you're not required to present anything,
> but do you wish to present any evidence on the issue of exhaustion?
>
> PLAINTIFF COOPER: Related to exhaustion of the misconduct process  --
>
> THE COURT: Any evidence?
>
> PLAINTIFF COOPER: No.
>
> THE COURT: It sounds like you're about to argue.
>
> PLAINTIFF COOPER: I'm sorry.
>
> THE COURT: **Do you have any evidence, any witnesses you want to call, any
> documents you want to produce as related to the issue?**  It appears to me that
> most of the documents are already in the Court's possession.
>
> PLAINTIFF COOPER: **Yes, they're already there.  I don't have nothing else
> I want to admit.**

 (Doc. No. 151 at 75–76 (emphasis added).)

In addition to being afforded the opportunity to present evidence at the evidentiary

hearing, Plaintiff had the opportunity to present oral argument to the Court.  (Id. at 78–79

(offering his arguments related to the issue of administrative exhaustion).)  And, finally, the

Court observes that, at the conclusion of the hearing, Plaintiff requested "extended time to

respond" to Defendants' proposed findings of fact and conclusions of law, to which the Court replied, "[o]f course." (Id. at 80; Doc. No. 148 (containing the Court's subsequent order granting Plaintiff's formal motion for an extension of time).) Again, however, at no point either during or after the evidentiary hearing did Plaintiff make any requests for additional time to submit evidence or assert any arguments that he did not have sufficient time to prepare for the hearing. Thus, for these reasons, Plaintiff's second argument is without merit.[11]

Accordingly, because Plaintiff's arguments are without merit, the Court will deny his motion for extraordinary relief.

## IV.   CONCLUSION

For the foregoing reasons, the Court will render a finding that Defendants have met their burden to demonstrate that Plaintiff failed to exhaust available administrative remedies as it relates to some of his remaining claims in this action and, specifically, his Section 1983 claims against Defendants Muthler and Pilosi. As a result, the Court will dismiss these claims based upon Plaintiff's failure to exhaust, as required by the PLRA. In addition, the Court will deny the parties' pending motions on the issue of administrative exhaustion. (Doc. Nos. 153, 161.) And, in light of these rulings, the Court will deny, as moot, Plaintiff's motion in limine seeking to preclude the presentation of exhaustion evidence at trial. (Doc. No. 119.) Accordingly, this

---

[11] Plaintiff alleges that, during this relevant period of time, he was not incarcerated at SCI Rockview (his typical housing assignment), and instead, was temporarily incarcerated at SCI Camp Hill so that he could appear in person for pretrial proceedings in October 2022. See, e.g., (Doc. No. 162 at 1, 4). While the Court recognizes Plaintiff's concerns that he was not confined at his typical housing assignment, the Court notes that Plaintiff has neither alleged nor shown that his confinement at SCI Camp Hill prevented or hindered him, in any way, from requesting additional time from the Court in order to prepare for the evidentiary hearing on the issue of administrative exhaustion.

action shall proceed on Plaintiff's First Amendment retaliation claim against Defendant Kauert.

An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania