IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIL COOPER, : | |
|     Plaintiff : | |
| : | No. 1:19-cv-02227 |
| v. : | |
| : | (Judge Kane) |
| MARK GARMAN, et al., : | |
|     Defendants : | |

## MEMORANDUM

Before the Court is a motion in limine to preclude pro se Plaintiff from introducing at trial any testimony or evidence of actual or compensatory damages, as well as damages to his reputation. For the following reasons, the Court will deny the motion.

**I.    BACKGROUND**

Pro se Plaintiff Jamil Cooper ("Cooper"), an individual currently in the custody of the Pennsylvania Department of Corrections ("DOC") at State Correctional Institution Chester, commenced this action by filing a complaint that the Clerk of Court docketed on December 30, 2019. (Doc. No. 1.) Cooper named as Defendants the following individuals, all whom were alleged to be DOC employees or work at his prior place of incarceration, State Correctional Institution Rockview ("SCI Rockview"), during the period relevant to his claims: (1) John Wetzel ("Wetzel"), the former Secretary of the DOC; (2) Mark Garman ("Garman"), a Facility Manager at SCI Rockview; (3) Trisha Pilosi n/k/a Trisha Walter ("Pilosi"), a hearing examiner at SCI Rockview; (4) Muthler ("Muthler"), a corrections officer at SCI Rockview; and (5) Kauert ("Kauert"), another corrections officer at SCI Rockview. (Id. at 2–3; 12–17.) In his complaint, Cooper asserted causes of action under 42 U.S.C. § 1983 against Defendants for violations of his First and Fourteenth Amendment rights, based on Muthler and Kauert searching his cell on April 25, 2018, which resulted in the confiscation of his property and the issuance of a

misconduct, as well as a subsequent disciplinary hearing before Pilosi at which Cooper was found guilty of misconduct. (Id. at 17–32.) For relief, Cooper sought declaratory relief, a name-clearing hearing, and "reasonable attorney fees, punitive damages and such other relief that this court deems proper and just." See (id. at 33.)

Defendants waived service, and they later filed an answer with affirmative defenses to the complaint on March 30, 2020.[1] (Doc. Nos. 12, 13.) The parties then engaged in discovery, after which they filed cross-motions for summary judgment. (Doc. Nos. 56, 64.) On September 3, 2021, the Court issued a Memorandum and Order denying Cooper's motion for summary judgment and granting in part and denying in part Defendants' cross-motion for summary judgment. (Doc. Nos. 74, 75.) In resolving Defendants' cross-motion, the Court (1) granted their motion seeking summary judgment in favor of Wetzel and Garman, and (2) denied their motion with respect to Cooper's: (a) First Amendment retaliation claim against (i) Kauert for issuing him a misconduct for engaging in constitutionally protected activity and (ii) Muthler for failing to intervene to stop Kauert's retaliation; and (b) Fourteenth Amendment due process claim against Pilosi for denying him due process at his subsequent disciplinary hearing, in further retaliation against him. (Doc. No. 74 at 13–24; Doc. No. 75 at 1.)[2] Additionally, the Court denied Defendants' motion insofar as they argued that they were entitled to summary judgment on their affirmative defense relating to Cooper's failure to exhaust his administrative remedies under the PLRA. (Doc. No. 74 at 9–13; Doc. No. 75 at 1.)

---

[1] Among their affirmative defenses, Defendants asserted that Cooper failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act ("PLRA"). (Doc. No. 13 at 6.)

[2] The Court directed that the Clerk of Court defer the entry of judgment in favor of Wetzel and Garman until the conclusion of this action. (Doc. No. 75 at 1.)

After resolving the cross-motions for summary judgment, the Court referred this action to the Prisoner Litigation Settlement Program for mediation. (Doc. No. 75 at 1.) On November 2, 2021, the court-appointed mediator reported that the parties failed to reach a settlement. (Doc. No. 77.)

Shortly before the mediator filed his report, Cooper filed a motion seeking the appointment of counsel. (Doc. No. 76.) On November 15, 2021, the Court issued an Order conditionally granting Cooper's motion and directing the Clerk of Court to forward a copy of that Order to the Chair of the Federal Bar Association's Pro Bono Committee. (Doc. No. 78.) Although the Chair was unable to locate counsel for Cooper, Joseph Gardner Price, Esquire ("Attorney Price"), entered his appearance on Cooper's behalf on July 19, 2022. (Doc. No. 96.) The Court then held two (2) telephone conferences with counsel for the parties and, thereafter, entered a Case Management Order ("CMO") on August 25, 2022. (Doc. Nos. 97–101.)

In accordance with the CMO, Defendants filed the instant motion in limine and supporting brief on September 26, 2022. (Doc. Nos. 102–03.) The parties then filed their respective pretrial memoranda, proposed jury instructions, and proposed voir dire on October 3, 2022. (Doc. Nos. 104–09.) Four days later, the Clerk of Court docketed a notice from Cooper in which he explained that he "terminated his client attorney relationship" with Attorney Price and wanted to proceed pro se in this action. See (Doc. No. 110). Consistent with Cooper's request, Attorney Price filed an unopposed motion to withdraw his appearance on October 11, 2022 (Doc. No. 112), which the Court granted the following day (Doc. No. 113). Since that time, Cooper has been proceeding pro se in this action.

The Court held a pretrial conference with Cooper and defense counsel on October 13, 2022. During the conference, the Court discussed several topics, including, inter alia, exhaustion

of administrative remedies, damages, proposed witnesses, and the various pretrial filings that had been submitted by the parties. However, because Cooper was now proceeding pro se, the Court sent him copies of all pretrial filings, directed him to review those filings, and scheduled a status conference for October 17, 2022, to confirm that he received the various filings from the Court. During the October 17, 2022 status conference, Cooper confirmed that he received the documents from the Court, and he indicated that he needed additional time to review all the pretrial filings. Based on Cooper's representations during the conference, the Court entered an Order on October 19, 2022, which, inter alia, (1) directed him to review the pretrial filings and update the Court on or before October 28, 2022, as to any outstanding issues with respect to those filings; (2) directed him to file a response to Defendants' pretrial filings and motion in limine; and (3) set a new trial date for November 1, 2022.³ (Doc. No. 117.)

Several days later, on October 24, 2022, Cooper filed a motion in limine "to preclude testimony or evidence relating to Grievance Exhaustion, or Exhaustion pursuant to Department of Corrections Policy 804[,]" as well as a supporting brief.⁴ See (Doc. Nos. 119, 120). On that same date, the Court directed Defendants to file a response to this motion in which they clarified their position on their affirmative defense of Cooper's failure to exhaust administrative remedies. (Doc. No. 122.) In accordance with this Order, Defendants filed a brief in opposition to Cooper's motion in limine the following day. (Doc. No. 123.)

On October 27, 2022, Cooper filed a brief in opposition to Defendants' motion in limine along with an exhibit list. (Doc. Nos. 126, 127.) On the same date, the Court held a status

---

³ Pursuant to the CMO, a jury trial had been scheduled for October 24, 2022. (Doc. No. 101 at 1.)

⁴ Along with this motion in limine, Cooper filed proposed voir dire questions. (Doc. No. 121.)

4

conference with Cooper and defense counsel, after which the Court scheduled an evidentiary hearing to determine whether Defendants met their burden to establish the affirmative defense of Cooper's failure to exhaust administrative remedies. (Doc. No. 129.) The Court also continued the trial. (Id.)

On November 1, 2022, the Court held an evidentiary hearing on the exhaustion issue.[5] (Doc. No. 151.) Following the hearing, the parties filed several submissions pertaining to exhaustion.[6] (Doc. Nos. 138, 139, 141, 147, 152–54, 159–162.) On January 9, 2024, the Court issued a Memorandum and Order in which the Court determined that (1) Defendants met their burden to establish that Cooper failed to exhaust his administrative remedies regarding his First Amendment retaliation claim against Muthler and his Fourteenth Amendment due process claim against Pilosi, (2) Defendants failed to meet their burden concerning Cooper's First Amendment retaliation claim against Kauert, and (3) Cooper's motion in limine seeking to preclude the presentation of evidence relating to administrative exhaustion at trial was moot. (Doc. Nos. 163, 164.) Therefore, Cooper's only remaining cause of action is his Section 1983 First Amendment retaliation claim against Kauert. (Id.)

Following the Court's resolution of the administrative exhaustion issue, the Court did not schedule a new trial date because the parties indicated that they were engaging in settlement discussions. (Doc. Nos. 165, 166.) On April 10, 2024, the Court issued an Order providing the parties with additional time to engage in settlement discussions and directed the parties to file a status report by July 3, 2024. (Doc. No. 171). On June 27, 2024, the Clerk of Court docketed a

---

[5] On the same date, Cooper filed a pretrial memorandum. (Doc. No. 132.)

[6] During this period, the Court also entered an Order staying Cooper and Defendants' motions in limine pending the Court's resolution of the exhaustion issue. (Doc. No. 158.)

5

status report from Cooper in which he and defense counsel had come to "some preliminary agreement," but because of a "breakdown in communication," he asked the Court to again refer the case to the Prisoner Litigation Settlement Program. See (Doc. No. 172). Four days later, Kauert filed a status report in which he indicated that the parties were unable to reach an agreement and requested that the Court schedule a new trial date. (Doc. No. 173.) Because this matter is ripe for a jury trial, the Court addresses Kauert's motion in limine.

II.     DISCUSSION

In Kauert's motion in limine, he seeks to have the Court preclude Cooper from introducing any testimony or evidence at trial pertaining to actual or compensatory damages, as well as damages to his reputation, because Cooper never requested compensatory damages or damages for loss of reputation in his complaint. (Doc. No. 103 at 1, 2.) Regarding actual or compensatory damages generally, nothing Cooper has filed in this case to this point suggests that he is seeking any form of compensatory damages other than damages for loss of reputation. See, e.g., (Doc. No. 132 at 5 ("Plaintiff seeks compensatory damages for harm to his reputation, punitive damages, attorneys [sic] fees and costs as allowable by statute.")); (Doc. No. 126 at 2 (referencing his "request to seek damages for Harm [sic] to His [sic] Reputation [sic]")). Therefore, the Court limits the analysis here to whether Cooper is precluded from requesting compensatory damages for loss of reputation if he prevails on his First Amendment retaliation claim against Kauert.

Kauert asserts that Cooper cannot seek damages for loss of reputation because: (1) the Court "previously determined" that Cooper did not "present . . . Defendants with averments that would infer that a request of actual or compensatory damages or for any loss to his reputation was appropriate in this litigation"; (2) the PLRA bars any request for damages for mental or

6

emotional injuries because Cooper did not allege or show that he suffered any physical injury or actual damages because of Kauert's alleged retaliation; and (3) he "did not raise a state-law defamation claim or allege any facts related to a harm to his reputation." See (Doc. No. 103 at 2–3.) In opposing this motion, Cooper argues that the Court should liberally construe his submissions to include a request for compensatory damages (Doc. No. 126 at 2), which "can . . . coincide with a claim for the denial of due process," see (id. at 3). Cooper contends that Kauert has not been "caught off guard" by his request to seek compensatory damages for the loss of his reputation because he referenced such a loss in his brief in support of his motion for summary judgment as well as in his affidavit in support of the motion. See (id. (citing Doc. No. 58 at 14 & nn.4–6; Doc. No. 58-1 at 150–51)). Cooper also asserts that Kauert failed to cite to any case under the PLRA showing that Cooper cannot seek damages for loss of reputation in this action. (Id.) As explained below, the Court concludes that Cooper is not precluded from introducing evidence pertaining to any loss of reputation he suffered because of Kauert's alleged retaliation.

Initially, the Court notes that Cooper recognizes that he did not request any form of compensatory damages in his complaint. See (id. at 2 ("Plaintiff requested the following forms of relief [sic] declaratory Judgment [sic], a name clearing hearing, punitive damages and such other relief that this court deems proper and just.")); (Doc. No. 1 at 33 (seeking relief in the nature of (1) a declaratory judgment, (2) a name-clearing hearing, (3) the Court retaining jurisdiction until such time as Defendants' unlawful practices no longer exist, and (4) "reasonable attorney fees, punitive damages and such other relief that this court deems proper and just")). If Cooper was seeking any form of compensatory damages in this Section 1983 action, he should have included a request for them in the complaint. See Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain: . . . (3) a demand for the relief sought,

7

which may include relief in the alternative or different types of relief."). Yet, he did not do so. As such, Cooper's failure to demand any form of monetary damages other than punitive damages in the complaint would seemingly foreclose him from seeking compensatory damages for loss of reputation at trial.[7] However, the resolution of this issue is not quite so obvious because of Federal Rules of Civil Procedure 54(c) and 15(b).

Rule 54(c) provides that, outside of the default judgment context, "[e]very . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." See Fed. R. Civ. P. 54(c). As the Third Circuit Court of Appeals has explained:

> This rule "requires that a court ascertain whether the plaintiffs are entitled to any remedy. As long as the plaintiffs have stated a claim for relief, it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not." Kirby v. United States Gov't, 745 F.2d 204, 207 (3d Cir. 1984) (emphasis omitted).
>
> . . . The rule was meant to protect a plaintiff from clumsy pleading, which, through technical oversight, might deprive it of a deserved recovery. "The [rule's] most common usage is when the amount of the award varies from the demand for relief." 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2664, at 183 (3d ed. 1998). The rule has also been used to allow for the award of attorney's fees and costs even though none was demanded, or for recovering interest on a claim as damages. Id. at 185–86. As the Advisory Committee explains, it "makes clear that a judgment should give the relief to which a party is entitled, regardless of whether it is legal or equitable or both." Fed. R. Civ. P. 54 advisory committee's note to 1937 adoption. In other words, Rule 54(c) addresses and cures a limited formal problem. It is not designed to allow plaintiffs to recover for claims they never alleged.
>
> [Thus, a party may] seek[] to vary relief but [may not] add judgments based on new claims . . . . By trying to invoke Rule 54(c), [a party seeking to add judgments

---

[7] Even though Cooper also did not include a demand for nominal damages along with his demand for punitive damages in his complaint, he did not need to do so to obtain a nominal damages award should he prevail against Kauert at trial. See Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000) ("Although Allah does not expressly seek nominal damages in his complaint, this court has held that 'it is not necessary to allege nominal damages'" (quoting Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965))).

8

> based on new claims] confuse[s] the demand for relief with the claims on which that demand is based. While "[i]nasmuch as the demand for relief does not constitute part of the pleader's claim for relief, a failure to demand the appropriate relief will not result in a dismissal," the converse is not true. Wright et al., supra, § 2664, at 180. That is, "the court cannot provide a remedy, even if one is demanded, when plaintiff has failed to set out a claim for relief." Id. at 179; see also 10 James Wm. Moore et al., Moore's Federal Practice § 54.72(2), at 54–137 (3d ed. 2004) ("The Rule permits relief not demanded only when the party affirmatively shows an entitlement to the relief and is inapplicable when the pleader fails to demonstrate the proper substantive grounds for relief.").

See USX Corp. v. Barnhart, 395 F.3d 161, 165–66 (3d Cir. 2004) (second alteration in original).

The Third Circuit has further discussed Rule 54(c) and its interplay with Rule 15(b) as follows:

> What a court may do [under Rule 54(c)] ultimately is limited by fundamental notions of due process and fair play. Sylvan Beach, Inc. v. Koch, 140 F.2d 852, 861–862 (8th Cir. 1944). Fed. R. Civ. P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings. Cioffe v. Morris, 676 F.2d 539, 541 (11th Cir. 1981). Put another way, relief may be based on a theory of recovery only if the theory was presented in the pleadings or tried with the express or implied consent of the parties. Monod v. Futura, Inc., 415 F.2d 1170, 1174 (10th Cir. 1969).
>
> When relief is based on a theory of recovery not raised in the pleadings, the requirements of Fed. R. Civ. P. 15(b) may come into play. Cioffe, 676 F.2d at 541. Fed. R. Civ. P. 15(b) requires that unpled issues which are tried with the express or implied consent of the parties are to be treated as if they were raised in the pleadings. The court shall permit the pleadings to be amended to conform to the evidence offered when the presentation of the merits of the action will be subserved and the opposing party will not thereby be prejudiced.
>
> The primary consideration in determining whether leave to amend under Fed. R. Civ. P. 15(b) should be granted is prejudice to the opposing party. See United States v. Hougham, 364 U.S. 310, 315, 81 S.Ct. 13, 17, 5 L.Ed.2d 8, 13 (1960). The principal test for prejudice in such situations is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory. Universe Tankships, Inc. v. U.S.A., 528 F.2d 73, 76 (3d Cir. 1975); see also Cioffe, 676 F.2d at 542. The propriety of granting leave to amend under Fed. R. Civ. P. 15(b) and of granting relief under Fed. R. Civ. P. 54(c) depend on basically similar considerations.

See Evans Prods. Co. v. W. Am. Ins. Co., 736 F.2d 920, 923–24 (3d Cir. 1984).

9

In this case, by asserting a demand for compensatory damages in his pretrial memorandum, see (Doc. No. 132 at 5 ("Plaintiff seeks compensatory damages for harm to his reputation, punitive damages, attorneys [sic] fees and costs as allowable by statute.")), Cooper is not seeking to add a new claim or theory of relief.  Instead, he is only seeking to add a different form of relief than he requested in the complaint should he prevail on his asserted constitutional violation against Kauert.  That different form of relief—damages for loss of reputation—would be a proper form of recoverable compensatory damages in a Section 1983 action.  In this regard, Section 1983:

> creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution.  Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts.
>
> Punitive damages aside, damages in tort cases are designed to provide compensation for the injury caused to plaintiff by defendant's breach of duty.  To that end, compensatory damages <u>may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . ., personal humiliation, and mental anguish and suffering</u>.  Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses.  Congress adopted this common-law system of recovery when it established liability for constitutional torts.  Consequently, the basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights.

See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305–07 (1986) (emphasis added) (internal citations, quotation marks, and footnotes omitted).

Based on the above, Rule 54(c) provides a mechanism by which this Court may allow Cooper to seek compensatory damages for loss of reputation at trial.[8]  Even if the Court

---

[8] The Court notes that in arguing that Cooper should be precluded from introducing any evidence relating to any harm to his reputation at trial, Kauert relies on another decision from this District, Kozlowski v. JFBB Ski Areas, Inc., No. 18-cv-00353, 2020 WL 2568408 (M.D. Pa.

determined that Rule 54(c) did not apply because Cooper was seeking "relief based on a theory of recovery not raised in the pleadings," Rule 15(b) would allow Cooper to seek compensatory damages for harm to reputation at trial. As explained above, "[t]he primary consideration in determining whether leave to amend under Fed. R. Civ. P. 15(b) should be granted is prejudice to the opposing party." See Evans Prods. Co., 736 F.2d at 924 (citing Hougham, 364 U.S. at 315). Here, Kauert does not contend in his supporting brief that he would be prejudiced by having to defend against a claim for compensatory damages for loss of reputation, see generally (Doc. No. 103), and the Court is not obligated to identify any possible prejudice for him.  Accordingly, whether analyzed under Rule 54(c) or Rule 15(b), Cooper is permitted to introduce evidence of damages in the nature of loss of reputation at trial.

    Kauert's arguments in support of his motion do not alter this result.  Concerning his contention that the Court made a "preliminary determin[ation]" relating to Cooper's failure to present allegations to recover any form of compensatory damages, see (Doc. No. 103 at 2), he is

---

May 13, 2020).  (Doc. No. 103 at 2.)  Contrary to Kauert's argument, Kozlowski supports a conclusion that Rule 54(c) would allow Cooper to attempt to seek compensatory damages for harm to reputation at trial.

    In Koslowski, the court addressed whether, inter alia, the plaintiff could pursue punitive damages at trial when the plaintiff's complaint did not include a request for punitive damages. 2020 WL 2568408, at *3.  The plaintiff argued that he could pursue punitive damages despite the failure to request punitive damages in the complaint based primarily on Rule 54(c).  See id.  The court concluded that the plaintiff could seek an award of punitive damages at trial pursuant to Rule 54(c) because he included allegations in the complaint that the defendants were grossly negligent and reckless, which, if proven, would support an award of punitive damages under Pennsylvania law.  See id. at *5.

    Here, Cooper has a viable Section 1983 First Amendment retaliation claim, and harm to reputation is a form of compensatory damages recoverable under Section 1983.  See Stachura, 477 U.S. at 307.  Thus, because Cooper has asserted a form of relief on a theory of recovery set forth in the complaint, Koslowski does not support the Court precluding Cooper from seeking compensatory damages for loss of reputation at trial.

mistaken. Kauert points to the Court's January 29, 2021 Order, which primarily addressed two discovery-related motions by Cooper, as evidencing this preliminary determination. (Id. (citing Doc. No. 50 at 4)). However, the Court neither mentioned compensatory damages generally nor damages for loss of reputation in that Order. Instead, the Court stated in pertinent part as follows:

> The Court agrees with Defendants that nowhere in Plaintiff's complaint is an allegation that he lost his prison job as a result of Defendants' alleged retaliatory actions. To the extent Plaintiff seeks to now assert such an allegation, he cannot do so through an affidavit supporting his motion to compel. Cf. Commonwealth of Pennsylvania ex rel. Zimmerman v. Pepsi Co., Inc., 836 F.2d 173, 181 (3d Cir. 1988) (noting that a complaint may not be amended by a brief opposing a motion to dismiss).

See (Doc. No. 50 at 4–5). This statement was limited to the Court pointing out that Cooper did not allege that he lost his prison job due to the alleged retaliation and Cooper's inability to amend his complaint through an affidavit in support of a motion to compel. Thus, the Court did not make a preliminary determination regarding Cooper's ability to recover compensatory damages generally or damages for loss of reputation.

Kauert next argues that the PLRA bars any request from Cooper for damages for mental or emotional injuries because Cooper did not allege that he suffered any physical injury or actual damages. (Doc. No. 103 at 2.) Cooper does not appear to contest this argument in his opposition brief. Even if he did, Kauert is correct that the PLRA prevents a prisoner asserting a Section 1983 claim to seek damages for mental or emotional injuries without a showing of physical injury. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as

defined in section 2246 of Title 18).").[9]  However, Section 1997e(e) is inapplicable to Cooper's claim for damages for loss of reputation because such a loss is not a "mental or emotional injury."  See id.; Hoever v. Marks, 993 F.3d 1353, 1373 (11th Cir. 2021) (Newsom, J., concurring in part) ("I would . . . conclude that § 1997e(e) does not bar [Hoever's] suit to the extent that it seeks damages, of any kind, based on [the] 'blemish to his prison record,' 'impairment of his reputation,' and 'defamation.'  A suit alleging only those injuries is not on my reading 'for'—i.e., concerning—'mental or emotional injury,' and would thus fall outside § 1997e(e)'s ambit.").

Kauert's third, and final, argument is that Cooper cannot seek damages for loss of reputation because he "did not raise a state-law defamation claim or allege any facts related to a harm to his reputation" in his complaint.  See (Doc. No. 103 at 3).  While Kauert is correct insofar as he points out that Cooper has not sued for defamation and did not include factual allegations about any loss of reputation in the complaint, these facts have no impact on the outcome of this motion.  The Court has already explained that Cooper's failure to include factual allegations relating to the loss of his reputation is not determinative, because he may generally seek compensatory damages for retaliation in violation of the First Amendment.  Moreover, loss of reputation is a form of recoverable damages under Section 1983 for a constitutional violation.  See Stachura, 477 U.S. at 307.

---

[9] Section 1997e(e) does not prevent Cooper from seeking nominal damages, punitive damages, or a declaratory judgment.  See Allah, 226 F.3d at 251–52 (explaining that Section 1997e(e) does not preclude a prisoner Section 1983 plaintiff from recovering nominal or punitive damages (citations omitted)); Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003) ("§ 1997e(e) does not apply to claims seeking injunctive or declaratory relief.").

Overall, Kauert's arguments do not warrant granting his motion in limine. Nonetheless, there is an aspect of Cooper's alleged damages for loss of reputation that warrants further discussion. More specifically, despite both parties referencing damages for loss of reputation, Cooper does not appear to be seeking such damages. Unfortunately, since Cooper did not include any factual allegations concerning harm to his reputation and failed to request compensatory damages in the complaint, the Court is limited to his purported references to the harm to his reputation in his other submissions in trying to ascertain which type of compensatory damages he is seeking in this case.

In his brief opposing Kauert's motion in limine, Cooper points to two portions of his submission in support of his motion for summary judgment (Doc. No. 58) as demonstrating that he previously referenced the harm to his reputation caused by Defendants' alleged constitutional violations. (Doc. No. 126 at 2.) The first portion of his supporting submission is Cooper's brief, wherein he stated:

> The adverse consequence of the class 1 misconduct casts a heavy burden upon Mr.Cooper [sic] without cause the Court of appeals [sic] for the third [sic] circuit [sic] observed that "Class 1 misconducts subject inmates to a range of sanctions, including a disadvantageous change in housing assignment, placement in restricted housing or restrictive confinement for upto [sic] 90 days, or a detrimental change in program level. They also result in loss of the ability to participate in prerelease programs, including work release and temporary home furloughs for nine months".., [sic] it was also recognized that the outcome for receiving a class 1 misconduct for a [sic] infamous charge as contraband can damage the prisoner's status. Before the misconduct hearing, and sanction, Mr.Cooper [sic] was working in the prison electric crew getting hands on experience in a profession that is in need,and [sic] maintained a good work report as exemplified by the "inmate progress report" that is dsted [sic] may1st [sic], 2018. Mr.Cooper [sic] goes to the misconduct hearing on the same day gets a (30) [sic] day sanction for contraband and after the (30) [sic] days gets fired and remove [sic] from his employment. The same employment that enabled him to work in secure areas with toolsand [sic] minimal supervision. This was also the primary source of income for the prisoner plaintiff, Mr.Cooper [sic]. Because of the ficiticous [sic] misconduct has [sic] suffered life changing adverse consequences because of the actions of the defendants. Causing Mr.Cooper [sic] to look for other means for a source of

14

> income, which was not necessary before because he had a regular source of income minor at [sic] it may be, and on the job training.  To this day Mr.Cooper [sic] has not been allowed to work on the electric crew which is the profession of choice of [sic] that Mr.Cooper [sic] was training for.

See (Doc. No. 58 at 14–15 (footnotes omitted)).

The second portion of Cooper's supporting submission he references is his affidavit, wherein he indicated:

> 58) the sanction of cell restriction eliminates the use of telephone as part of my punishment.  it [sic] also imposes total confinement in the cell, that mean [sic] no work [sic] no school [sic] and it can eliminate a prisoner from any group activities or programs that the inmate needs for parole.  I [sic] isolates you from everybody. you [sic] can have (1) one [sic] hour of yard if they open the door for you so the punishment is real.
>
> 59) I lost my job, because I did'nt [sic] show up for work, but I could'nt [sic] show up for my prison assigned job because I was service a thirty day [sic] restriction for having contriban [sic] in my cell [sic] Contriban [sic] that was given back to me.  All of this because the C/O was mad at me for suing his coworkers.
>
> 60) indeed i [sic] took a hit from the misconduct sanction.  I am not the guy that gets misconduct sanctions, and here in prison everything is given on merit of your behavior and record in the institution, and if you get a sanction your status takes a hit [sic] makes you ineligible for groups, all activities, certain desireable [sic] jobs and even parole eligibility, especially when it pertain [sic] to the type of misconduct charge it [sic] is and its [sic] on your record.

See (Doc. No. 58-3 at 49–50).

As demonstrated by these referenced portions, Cooper is not claiming any harm to his reputation in the traditional sense.  At best, he is claiming that his misconduct affected his status at SCI Rockview.  In other words, he is claiming that being found guilty of misconduct affected his eligibility to participate in the job he desired, certain groups, and certain activities.  (Doc. No. 58 at 14–15; Doc. No. 58-3 at 49–50.)  These effects following his misconduct finding do not relate to his "reputation."  See Reputation, Black's Law Dictionary (12th ed. 2024) (defining reputation as "[t]he esteem in which someone is held or the goodwill extended to or confidence

15

reposed in that person by others, whether with respect to personal character, private or domestic life, professional and business qualifications, social dealings, conduct, status, or financial standing"). Interestingly, Cooper appears to acknowledge this concept of reputation in his opposition brief, when he states that "[t]he impairment if any to a plaintiffs [sic] reputation must be measured by the <u>perception of others rather than that of the plaintiff because reputation is the estimation in which one's character is held by his neighbors or associates</u>." <u>See</u> (Doc. No. 126 at 3 (citing <u>Sprague v. Am. Bar Ass'n</u>, 276 F. Supp. 2d 365, 370 (E.D. Pa. 2003))).

Despite Cooper's apparent confusion over what constitutes a loss of reputation, the Court infers that he is seeking monetary damages for the collateral consequences of the alleged First Amendment violation. The Court reminds Cooper that it is his burden to prove that he is entitled to recover compensatory damages for alleged lost opportunities within the prison caused by the alleged constitutional violation or other forms of compensatory damages that he can quantify for a jury's consideration. <u>See</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995) (pointing out that the plaintiff bears the burden of proof on the elements of a Section 1983 action); <u>see also</u> <u>Vincent v. Annucci</u>, 63 F.4th 145, 152 (2d Cir. 2023) ("The burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages." (citation and internal quotation marks omitted)).

### III. CONCLUSION

For the reasons set forth above, Kauert's motion <u>in</u> <u>limine</u> will be denied. In addition, since this matter is trial ready, the Court will schedule a telephone conference to set a trial date. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania